# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Bankruptcy No. 12 B 16471 |
| CHARLES EDWARD TAYLOR, II, | ) | Judge Donald R. Cassling |
| | ) | |
| Debtor. | ) | |

## ORDER ON FIFTH AND FINAL APPLICATION OF STEVEN B. TOWBIN AND SHAW FISHMAN GLANTZ & TOWBIN LLC AS COUNSEL FOR CHARLES EDWARD TAYLOR, II

This matter is before the Court on the fifth and final application (the "Fifth Application") of Steven B. Towbin and Shaw Fishman Glantz & Towbin LLC (the "Applicant"), as counsel for Charles Edward Taylor, II (the "Debtor"), for allowance and payment of compensation and reimbursement of expenses.[1] The Fifth Application covers the period of August 1, 2014 through November 12, 2015. The Applicant seeks allowance of fees in the sum of $126,140.36 comprised of $75,222 for services rendered during this period, plus $50,918.35[2] in additional fees related to an adversary proceeding, as well as reimbursement of expenses in the amount of $936.82.[3] The Fifth Application also seeks final approval of the prior awards of fees and expenses for a total of $567,481.70[4] in fees and $22,068.29[5] in expenses.

---

[1] The Court previously allowed the Applicant the following fees and expenses: (1) First Application—$149,490 in fees, with only $114,022.38 assessed against the estate, and costs of $5,489.68; (2) Second Application—$132,962.50 in fees, with only $85,695.63 assessed against the estate, and costs of $3,684.19; (3) Third Application—$252,220.50 in fees, with only $193,433.63 assessed against the estate, and costs of $7,610.81; and (4) Fourth Application—$48,189.71 in fees, all of which were assessed against the estate, and costs of $2,382.28. (Dkt. Nos. 154, 221, 319, and 385.)

[2] The Applicant states that the amount is $50,918.36 but that number is off by $0.01.

[3] The Applicant originally requested reimbursement of $6,572.87 for its expenses but voluntarily reduced this figure by $622.50 for photocopying costs and then further reduced the amount sought by $5,013.55. Now, the Applicant only seeks reimbursement of $936.82 for its Westlaw charges.

[4] This figure is based on the following computation:

An objection to the Fifth Application was filed by Patricia Caiarelli ("Ms. Caiarelli"). Ms. Caiarelli objects to the fees and expenses on numerous grounds.[6] The parties declined the opportunity for an evidentiary hearing. Rather, the Court heard oral argument from the Applicant and counsel for Ms. Caiarelli. The Court has reviewed all of the briefs and considered the oral argument of counsel.

For the reasons set forth herein, the Court sustains in part and overrules in part the objection of Ms. Caiarelli to the final fees and expenses sought by the Applicant. The Applicant is awarded final compensation in the amount of $313,935.93 and is authorized reimbursement of its expenses in the sum of $11,645.85 from the Debtor's estate.

## BACKGROUND FACTS

In 2005, the Debtor's brother died in a boating accident. Ms. Caiarelli is the decedent's ex-spouse and guardian of their minor child. The minor child was the primary beneficiary of the decedent's estate. The Debtor was the personal representative of the decedent's estate. On April

---

| | |
|---|---|
| Fees Related to Adversary Proceeding | $97,279.25 |
| First Fee Order (less fees related to Adversary Proceeding) | $104,350.00 |
| Second Fee Order (less fees related to Adversary Proceeding) | $69,940.00* |
| Third Fee Order (less fees related to Adversary Proceeding) | $173,838.00 |
| Fourth Fee Order (less fees related to Adversary Proceeding) | $46,852.45 |
| Fifth Fee Application Period | $75,222.00 |
| **Total** | **$567,481.70** |

*The Applicant asserts that the Second Fee Order (less fees related to the Adversary Proceeding) awarded fees of $117,206.87. This amount is incorrect because it includes fees that were allowed but not payable from the Debtor's estate.

[5] *See* Charts at pp. 27-28, 43, 50, 57, & 58 (listing expenses sought in each Application).

[6] Ms. Caiarelli states in her objection that she is treating the Fifth Application as another interim application because the Applicant states that it reserves the right to apply for additional compensation for any legal services that are rendered on behalf of the Debtor's estate after the final application period. Regardless of how Ms. Caiarelli decides to treat this Application, the Court is treating this Fifth Application as a final request for fees by the Applicant. Indeed, the Applicant states throughout the Application that it (1) seeks "final approval of all compensation and expense reimbursement previously applied for on an interim basis;" (2) "requests that the Court approve, on a final basis, all fees and expenses previously awarded by this Court;" and (3) seeks "payment on a final basis of a total of $614,748.57 in fees and $25,739.83 in expenses." (Fifth and Final Application, pp 1, 8, & 12.) In addition, while the Applicant can certainly make the statement that it is reserving its right to seek additional fees, the Court is treating this as the *final* request for fees by the Applicant.

10, 2006, Ms. Caiarelli, on behalf of the minor child, filed a lawsuit in the Washington state court against the Debtor, alleging that he had taken funds that the decedent had intended to entrust for his son.

On December 20, 2011, after a jury trial, the Washington state court entered a $1.4 million judgment against the Debtor. The Debtor appealed that verdict. On May 19, 2014, the Washington state appellate court denied the appeal and affirmed the jury verdict. The Washington appellate court also granted Ms. Caiarelli her attorney's fees and costs. The state court assigned the $1.4 million judgment to her.

The Debtor filed a voluntary Chapter 11 petition on April 23, 2012. The Debtor retained the Applicant as his counsel in this case. After a contested hearing at which Ms. Caiarelli objected to confirmation, a plan was confirmed. (Dkt. No. 200.)

Ms. Caiarelli filed an adversary proceeding (the "Adversary Proceeding") against the Debtor in which she sought, among other things, a finding that the $1.4 million judgment against the Debtor was non-dischargeable.[7] The Applicant also represented the Debtor in the Adversary Proceeding. The Court dismissed that adversary proceeding on the basis that Ms. Caiarelli did not have standing to enforce the judgment against the Debtor.[8] This Court found that the assignment to Ms. Caiarelli had not actually been finalized because the same Washington state court judge who had entered the order assigning the $1.4 million judgment to Ms. Caiarelli subsequently stated in a letter to the parties that Ms. Caiarelli had skipped steps that were necessary to effectuate that assignment. Apparently acknowledging that the assignment order

---

[7] On July 31, 2012, Ms. Caiarelli filed the Adversary Proceeding against the Debtor (12 A 01188). In the five-count complaint, she objected to the dischargeability of a debt under 11 U.S.C. § 523(a)(4) and (a)(6); sought a declaration that certain property of the Debtor be declared property of her minor son; and sought the imposition of an equitable lien on certain of the Debtor's property.

[8] On February 18, 2016, Ms. Caiarelli filed a motion for relief from the order dismissing the Adversary Proceeding. (Dkt. No. 144.) That motion is currently pending.

was not yet effective, Ms. Caiarelli returned to the Washington state court to request that the court ratify the assignment to her. The state court granted Ms. Caiarelli's request and ratified the assignment.

The Debtor filed a motion for contempt against Ms. Caiarelli and her lawyers, Charles A. Kimbrough and Madeline Gauthier, for violation of the discharge injunction for pursuing ratification of the assignment in the Washington state court. (Dkt. No. 224.) The Court agreed with the Debtor and found that the respondents violated the discharge injunction and the plan injunction and awarded monetary damages in favor of the Debtor. (Dkt. Nos. 278 & 293.) Following an appeal of that ruling, the District Court and the Seventh Circuit determined that Ms. Caiarelli and her attorneys did not violate either the plan injunction or the discharge injunction. *In re Taylor*, 526 B.R. 719 (N.D. Ill. 2014), *aff'd*, 793 F.3d 814 (7th Cir. 2015).

Pursuant to the confirmed plan, the Debtor's secured creditors were paid in full. (Motion for Entry of Final Decree, pp. 2-3.) The Debtor's unsecured creditors, which include Ms. Caiarelli, have not received any distributions. (*Id.* at p. 3.) The Court entered a final decree in this case on March 29, 2016. (Dkt. No. 452.)

## STANDARDS FOR AWARDING ATTORNEY'S FEES

The Applicant requests an award of fees under 11 U.S.C. §§ 330 and 331. Those sections require all professional persons employed under 11 U.S.C. §§ 327 or 1103 to demonstrate that their services were actual, necessary, and reasonable. 11 U.S.C. § 330(a)(1)(A). Courts have an independent duty to examine the reasonableness of the fees requested. *In re Wyslak*, 94 B.R. 540, 541 (Bankr. N.D. Ill. 1988). Section 330(a)(2) empowers a court, in its discretion, to award or deny the requested compensation.

In exercising that discretion and determining whether the compensation to be awarded is

4

in fact reasonable, § 330(a)(3) sets forth a non-exhaustive list of relevant factors to be considered. The statute also specifically prohibits compensation for services that were unnecessarily duplicative or not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A). Fees for a debtor's attorney are properly payable out of estate assets when a commensurate benefit to the estate is provided, but not for services which personally benefit only the debtor. *See In re Stoecker*, 114 B.R. 965, 969-70 (Bankr. N.D. Ill. 1990) (citing *In re Ryan*, 82 B.R. 929, 931-32 (N.D. Ill. 1987)).

The Applicant bears the burden of proof to show entitlement to the fees requested. *See In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987). "Part and parcel of this burden is the responsibility to include sufficient detail in the application to enable the Court to make an informed judgment about the reasonableness of the fees sought and the necessity and benefit of the work performed." *In re Harry Viner, Inc.*, No. 11-16408-7, 2014 WL 3867563, at *4 (Bankr. W.D. Wis. Aug. 5, 2014).

Interim fee awards are discretionary and are subject to re-examination and adjustment during the course of the case, and courts may review the case at its conclusion and take into account the results obtained in making a final allowance of fees. *In re GSB Liquidating Corp.*, No. 94 B 24672, 1995 WL 521528, at *2 (Bankr. N.D. Ill. Aug. 21, 1995).

Ms. Caiarelli objects to the fees sought by the Applicant in the Fifth Application. In addition, she objects to the final allowance of fees and expenses awarded in the First, Second, and Third Applications. She raises objections to numerous time entries in each of those Applications. Ms. Caiarelli also challenges the hourly billing rate of one of the attorneys at the Applicant's firm and the extent of his involvement in the Debtor's case. Finally, Ms. Caiarelli contends that the total fees and expenses sought by the Applicant are unreasonable and excessive

based upon the amount of assets administered in this case and the lack of any distribution to unsecured creditors.

## DISCUSSION

### A. Objection to the Fifth Application

The Fifth Application sets forth services rendered by the Applicant in several categories including: (1) Case Administration; (2) Mediation; (3) Pre-Petition Litigation; (4) Sale of Property; (5) the Adversary Proceeding; and (6) Fee Applications.[9]  Ms. Caiarelli has raised specific objections to the fees sought in these categories.  In addition, she objects to some of the expense reimbursements sought by the Applicant.  The Court will address each objection in turn.

### 1. Case Administration Category

In the Case Administration category, the Applicant spent 69.10 hours of time and seeks approval of $32,083.50 in fees.  According to the Applicant, the tasks in this category included: (1) researching and drafting a response brief to Ms. Caiarelli's motion to compel the filing of post-confirmation reports; (2) preparing post-confirmation reports; (3) reviewing and analyzing Ms. Caiarelli's motion to clarify that the discharge injunction did not apply to the motion to reaffirm the judgment assignment and attending a related hearing; (4) reviewing and analyzing Ms. Caiarelli's motion to clarify that certain third-party discovery did not violate the discharge injunction, researching and drafting a response, and attending a related hearing; (5) reviewing the motion filed by Ms. Caiarelli to identify the specific assets transferred by the confirmed Chapter 11 plan and attending a related hearing; (6) drafting a motion to compel liquidation of the Debtor's inherited IRA; and (7) responding to numerous inquiries by bankruptcy counsel for Ms. Caiarelli regarding orders entered prior to confirmation of the plan. (Fifth and Final Application,

---

[9] The only other categories not mentioned here are the Appeal and Discharge Injunction Violation categories. Ms. Caiarelli has not objected to the fees sought in these categories because the Applicant is not seeking allowance of any of the fees incurred from the Debtor's estate.

pp. 5-6 at ¶ 14.)

Ms. Caiarelli objects to the fees sought by the Applicant in this category on the basis that the time spent was excessive. In addition, she points to several time entries which she claims were improperly included in this category. Ms. Caiarelli recommends that the Court reduce the fees in the Case Administration category by $16,345.56. (Objection to Fifth and Final Application, p. 8 at ¶ 27.)

First, Ms. Caiarelli argues that the time spent by the Applicant opposing her motion to compel the Debtor to file quarterly post-confirmation reports was improper because the Applicant utilized attorneys to perform routine administrative tasks that should have been performed by paralegals, and the Court should not reward the Applicant for its failure to have the Debtor prepare these reports. The Applicant spent the following time and seeks the following fees with respect to the motion to compel and preparation of the reports: (1) 03/15/15 TGB .40 hours $184; (2) 03/16/15 SBT .20 hours $142; (3) 03/16/15 SBT .10 hours $71; (4) 03/16/15 TGB 1.40 hours $644; (5) 03/26/15 DRD .50 hours $162.50; (6) 03/30/15 DRD 2.80 hours $910; (7) 03/30/15 SBT .10 hours $71; (8) 03/30/15 TGB .30 hours $138; (9) 03/31/15 DRD .30 hours $97.50; (10) 03/31/15 TGB .30 hours $138; (11) 04/01/15 DRD .20 hours $65; (12) 04/02/15 TGB 4.90 hours $2,254; (13) 04/03/15 TGB .20 hours $92; (14) 04/03/15 DRD .60 hours $195; (15) 04/03/15 DRD .50 hours $162.50; and (16) 04/07/15 TGB 1.60 hours $736. The Applicant spent a total of 14.40 hours and seeks fees of $6,062.50.

On March 15, 2015, Ms. Caiarelli filed a motion to compel the Debtor to file quarterly post-confirmation reports. (Dkt. No. 390.) In her motion, Ms. Caiarelli sought an order compelling the Debtor to file the reports as well as her fees for bringing the motion. On April 3, 2015, the Debtor objected to that motion, arguing that Ms. Caiarelli failed to cite any relevant

authority in support of her motion.  (Dkt. No. 393.)  The Debtor asked for the motion to be

denied and also sought to have Ms. Caiarelli show cause why she and her counsel should not be

sanctioned under Federal Rule of Bankruptcy Procedure 9011(c) and 28 U.S.C. § 1927.  On that

same date, however, the Debtor also filed eight United States Trustee quarterly reports on the

status of plan payments for calendar quarters ending March 31, 2013, June 30, 2013, September

30, 2013, December 31, 2013, March 31, 2014, June 30, 2014, September 30, 2014, and

December 31, 2014.  (Dkt. Nos. 394-401.)  In light of those reports being filed, Ms. Caiarelli

withdrew her motion.

While monthly operating reports are not required for periods after confirmation of a plan,

the United States Trustee requires debtors or plan proponents to submit and file quarterly reports

on the status of plan payments.  Thus, the Debtor was required to file these reports.  A review of

these eight reports shows that a date was filled in for the calendar quarter and a line was checked

"no" in response to the question of whether any payments were required to be made under the

plan in the past calendar quarter.   In addition, the objection to Ms. Caiarelli's motion to compel

was only three pages in length and ultimately was an exercise in futility.  The objection served

no purpose because the Debtor filed the reports as requested by Ms. Caiarelli in her motion.  The

Applicant spent over 12 hours to draft that objection and the eight simple, routine reports.

The Court agrees with Ms. Caiarelli that the preparation of the reports was routine

administrative work that could and should have been performed by a paralegal instead of an

attorney.  Courts should disallow hours expended by counsel on "tasks that are easily delegable

to non-professional assistance." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th

Cir. 1999).   The Court may determine what constitutes a reasonable amount of time a

professional should spend on a given project. *See In re Wildman*, 72 B.R. 700, 713 (Bankr. N.D.

Ill. 1987). The Court finds that the Applicant's expenditure of attorney time on this task that was easily delegable to a paralegal was unreasonable and unnecessary. However, the Court will allow 1 hour of paralegal time at the hourly rate of $190 for the preparation of the reports.[10] Further, the expenditure of time by the Applicant on the objection to the motion to compel was unreasonable and will not be allowed. Accordingly, the Court disallows the $5,872.50 ($6,062.50 - $190) sought by the Applicant for the time spent on these tasks.

Next, Ms. Caiarelli argues that the Applicant included multiple entries in the Case Administration category that should have been allocated to the Appeal category. Those entries include the following: (1) 08/29/14 SBT .60 hours $417; (2) 08/29/14 SBT .10 hours $69.50; (3) 09/02/14 SBT .20 hours $139; (4) 09/03/14 SBT 1.0 hour $695; (5) 09/09/14 SBT .50 hours $347.50; (6) 09/10/14 SBT .30 hours $208.50; and (7) 09/17/14 SBT .20 hours $139. These entries total 2.90 hours and fees of $2,015.50. The Court reviewed the time entries and concurs with Ms. Caiarelli that the work performed by the Applicant related to the appeal and should have been included in the Appeal category. None of the fees incurred in that category are being sought from the Debtor's estate. Thus, the Court disallows $2,015.50 in fees that should have been included in the Appeal category.

Further, Ms. Caiarelli objects to the time spent by the Applicant objecting to her motion to clarify what assets passed under the confirmed plan.[11] On August 18, 2015, Ms. Caiarelli filed her motion to clarify which assets of the Debtor were transferred pursuant to the confirmed plan. (Dkt. No. 412.) Attached to that motion was an order dated July 28, 2015 from the state court

---

[10] According to the Applicant, its paralegal bills at the rate of $190 per hour. (Second Application, pp. 3-4 at ¶ 10.)

[11] Specifically, Ms. Caiarelli points to two time entries of TBG on 08/18/15 and 08/25/15 for a total of $1,242 in fees.

lawsuit filed by Ms. Caiarelli against the Debtor. [12] (*Id.* Ex. A.) That order required the parties to "ask Bankruptcy Court to . . . identify assets of [the Debtor] that were transferred by operation of [the Debtor's bankruptcy] Plan." (*Id.*) Because the motion to clarify was filed in accordance with that order, Ms. Caiarelli argues that the Applicant's objection to her motion did not confer any benefit to the estate and resulted in the matter going back to the state court unresolved.

On August 25, 2015, the Court denied Ms. Caiarelli's motion as unnecessary. (Dkt. No. 414.) At the hearing on the motion, Ms. Caiarelli suggested that the Debtor should produce a list identifying the non-exempt assets transferred under the plan. The Court agreed and found that the state court was the appropriate forum for the Debtor to be required to produce that list.

The Court sustains Ms. Caiarelli's objection to the Applicant's time spent opposing her motion. The state court ordered Ms. Caiarelli and the Debtor to come before this Court to seek an identification of the assets that were transferred under the Debtor's confirmed plan. The state court order was attached to Ms. Caiarelli's motion and clearly required the Debtor to participate in seeking a clarification of the assets transferred under the plan. Indeed, on January 8, 2016, Judge White found that by opposing Ms. Caiarelli's motion for clarification, the Debtor violated his July 28, 2015 order, which required the parties to jointly seek clarification from this Court. (Sur-Objection to Fifth Application, Ex. A, p. 4.) The state court entered sanctions against the Debtor. (*Id.* at p. 21.) Accordingly, the Court disallows the $1,242 in fees sought by the Applicant for the time spent objecting to Ms. Caiarelli's motion.

Next, Ms. Caiarelli objects to the time spent by the Applicant for the "ministerial act" of ensuring that the Debtor's inherited IRA was available for distribution to creditors. Ms. Caiarelli states that the Applicant seeks fees of $3,464 for this task, but fails to specify how she arrived at

---

[12] Ms. Caiarelli filed a suit in the Circuit Court of Cook County, Illinois to collect the attorney's fees and costs that were awarded to her pursuant to the Washington state court judgment entered against the Debtor on December 20, 2011. The case was assigned to Judge Alexander P. White.

that figure. In response to this objection, the Applicant states that the broker firm that held the inherited IRA—Dearborn Partners—refused to transfer the proceeds of the account absent a court order. Thus, the Applicant was required to draft and file a motion to vacate the previous order freezing the inherited IRA.[13]

The Court overrules Ms. Caiarelli's objection to the time spent by the Applicant on this task. First, Ms. Caiarelli did not specify the time entries in her objection that comprise the $3,464 figure with which she takes issue. The Court will not speculate how Ms. Caiarelli arrived at that number. More importantly, based on the Applicant's explanation regarding why this motion was filed, the Court finds that the time spent was both reasonable and necessary.

Ms. Caiarelli next objects to $2,656.56 in fees for time spent by the Applicant to transfer title to a piece of property. According to Ms. Caiarelli, this type of routine real estate work is typically performed for a fixed fee of $500 for an entire closing.

Once again, Ms. Caiarelli does not reference the time entries that she finds objectionable. Rather, she refers to $2,656.56 in fees without tying that figure to any of the Applicant's time entries. The Applicant explains that it undertook efforts to transfer title to the Debtor's real property located at 1522 North LaSalle Street, Chicago, Illinois pursuant to the plan. The Applicant contends that the transfer was more complicated than an ordinary real estate transfer because (1) the transfer was made pursuant to a confirmed plan and the standard transfer forms could not be used and (2) the water bill serviced a property other than 1522 North LaSalle Street, which required a number of administrative acts by the Applicant's paralegal. (Reply in Support of Fifth and Final Application, pp. 5-6 at ¶ 10.)

Based on the Applicant's explanation, the Court overrules Ms. Caiarelli's objection on

---

[13] On August 15, 2014, the Applicant filed a motion to vacate the stay order and for authorization to liquidate the inherited IRA. (Dkt. No. 353.) On August 19, 2014, the Court granted that motion. (Dkt. No. 355.)

this point. Clearly, the transfer of this real property was not routine real estate work as Ms. Caiarelli argues. The Court finds that the time spent by the Applicant on this task was both reasonable and necessary and will therefore be allowed.

Next, Ms. Caiarelli points to several time entries in this Case Administration category that were misclassified and do not belong in this category. First, on 08/13/14, the Applicant billed $347.50 for work performed by SBT with respect to preparation of the fee application. The Court agrees that this task does not belong in the Case Administration category and therefore disallows this amount. Further, on 10/01/14 and 10/07/14, the Applicant billed $208.50 and $695 for services by SBT related to the Mediation category. These time entries also do not belong in the Case Administration category and are therefore disallowed.

Next, Ms. Caiarelli objects to the time spent by SBT on 09/03/14[14] for a charge of $695 with respect to a meeting with K. McBride. She questions the benefit to the creditors or the estate. According to the Applicant, the time spent meeting with Ms. McBride, counsel for the Debtor's wife, involved the issue of titling of assets under the plan that were to be transferred to the Debtor's wife. (Reply in Support of Fifth and Final Application, p. 6 at ¶ 11.) Based on this explanation, the Court finds that the time spent was reasonable and necessary to the administration of the case, and thus overrules Ms. Caiarelli's objection.

In sum, the Court disallows a total of $10,381 ($5,872.50 + $2,015.50 + $1,242 + $347.50 + $208.50 + $695). Accordingly, the Court allows a total of $21,702.50 ($32,083.50 - $10,381) in the Case Administration category.

### 2.  Mediation Category

In the Mediation category, the Applicant spent 33.60 hours of time and seeks approval of

---

[14] Ms. Caiarelli refers to a time entry for Mr. Towbin on 09/03/15, but no entry exists for that date. The Court assumes she is referring to the entry on 09/03/14 based upon her objection to the services provided and the amount sought.

$16,737 in fees. Ms. Caiarelli objects to the entire amount sought by the Applicant in this category on the grounds that (1) the Applicant allegedly attempted to complicate and delay the mediation by turning it into a global settlement and (2) the Debtor did not proceed in good faith. Ms. Caiarelli contends that the Applicant seeks these fees for a mediation that accomplished nothing.

The Debtor, Ms. Caiarelli, and her lawyers, Ms. Gauthier and Mr. Kimbrough, participated in mediation proceedings before the Seventh Circuit Court of Appeals. According to the Applicant, at the initial mediation session, all parties agreed to empower Joel Shapiro, the chief mediator of the Seventh Circuit's mediation program, to attempt to broker a global resolution of all disputes involving Ms. Caiarelli, her attorneys, the Debtor, and the Debtor's parents in litigation still pending in the Washington state court. While the mediation efforts continued for months, the parties were ultimately unable to reach a global resolution. The Applicant states that the Debtor participated in the mediation in a good faith attempt to resolve all outstanding disputes.

The Court finds that the time spent by the Applicant in the Mediation category was both reasonable and necessary. First, the parties were required by the Seventh Circuit to participate in the mediation process. That the parties were unable to reach a resolution of their disputes does not mean that the Debtor's participation was the result of "false settlement attempts." This Court has previously held that fees related to settlement negotiations are compensable because they could confer a benefit to the estate. (*See* Amended Order on Fourth Interim Application, pp. 10-11.) Further, the Court finds no basis for Ms. Caiarelli's statement in her objection to the Fifth Application that "[the Applicant] attempted to complicate and delay the mediation by turning it into a global settlement mediation and then the Debtor did not proceed in good faith."

(Objection to Fifth and Final Application, p. 9 at ¶ 32.)  This allegation is not supported by any evidence.  Indeed, the Court notes that Ms. Caiarelli's current attorney was not involved in the mediation and has no personal first-hand knowledge of what happened during the process.

Accordingly, the Court overrules Ms. Caiarelli's objection to the fees sought by the Applicant in this category.  Those fees will be allowed in full.

### 3.  Pre-Petition Litigation Category

In the Pre-Petition Litigation category, the Applicant spent 2.90 hours of time and seeks approval of $1,329 in fees.  Ms. Caiarelli objects to the fees because there is no supporting detail and all pre-petition litigation was stayed by the filing of the Debtor's bankruptcy case almost four years ago.  According to Ms. Caiarelli, there was no reason for the Applicant to be working on any pre-petition litigation.

The Court overrules Ms. Caiarelli's objection to the fees sought in this category.  The Applicant stated in its response that it was necessary to communicate with the Debtor's state court counsel in order to determine the impact that the ongoing state court litigation would have on the bankruptcy estate.  The Applicant only spent 2.90 hours of time in this category.  The Court finds that the fees sought in this category were both reasonable and necessary for the administration of the estate.  Therefore, Ms. Caiarelli's objection is overruled and the fees are allowed in the requested sum of $1,329.

### 4.  Sale of Property Category

In the Sale of Property category, the Applicant spent .90 hours of time and seeks approval of $279 in fees.  Ms. Caiarelli objects to the entire amount sought in this category on the basis that the Debtor's plan was confirmed over a year ago and she is unaware of any property that could be sold.

14

The Applicant states that the time in this category was spent preparing a quitclaim deed. The Court finds that the time spent by the Applicant in this category related to the confirmed plan and was therefore both reasonable and necessary for the administration of the estate. Ms. Caiarelli's objection is overruled and the requested fees are allowed in full.

### 5. **Adversary Proceeding Category**

The Applicant does not seek any fees for services rendered with respect to the Adversary Proceeding category during the time period covered by the Fifth Application. Instead, the Applicant seeks allowance of an additional $50,918.35 in fees related to this category as well as the fees that were awarded pursuant to the prior fee applications. In those prior applications, the Applicant allocated only 25% of the fees in the Adversary Proceeding category to the Debtor's estate. The other 75% of the fees were classified by the Applicant as being personal to the Debtor because they involved the issues of the Debtor's exemptions and the dischargeability of a certain debt, and thus payment of those fees was not sought from the estate. According to the Applicant, it has reviewed all of the time entries from the prior applications related to the Adversary Proceeding category and, in order to more closely approximate the actual time spent working on the Adversary Proceeding category, proposes a renewed allocation that will allow an additional $50,918.35 in fees for a total of $97,279.25[15] in this category ($46,360.90 + $50,918.35).

The Applicant seeks this additional amount based on the following formula: (1) one-hundred percent of all time entries directly related to the Estate Counts ($10,124.50);[16] (2) one-

---

[15] The Court previously awarded the Applicant a total of $46,360.90 in the Adversary Proceeding category.

[16] The Estate Counts include Counts III, IV, and V of Ms. Caiarelli's complaint which sought to impose an equitable lien on property of the Debtor's estate.

hundred percent of all time entries related to the Rule 60(b) Motion ($7,599.50);[17] (3) zero

percent of all time entries related to the Dischargeability Counts ($0.00);[18] and (4) fifty percent

of all time entries related to the Estate Counts and the Dischargeability Counts that are not

related to the Rule 60(b) Motion ($79,555.25).  The Applicant has attached a spreadsheet

categorizing the time entries that relate to the Adversary Proceeding work.  (Fifth and Final

Application, Exs. B & C.)

Ms. Caiarelli objects to this additional amount sought by the Applicant as being both

procedurally improper and substantively flawed.  First, she argues that the Applicant is bound by

the 25% allocation that it proposed in the prior interim fee applications.[19]  The Court disagrees.

Interim compensation awarded under § 331 may be adjusted appropriately at a later time and

either decreased or increased.  *See In re Taxman Clothing Co.*, 49 F.3d 310, 314 (7th Cir. 1995)

("all awards of interim compensation are tentative"); *Harry Viner*, 2014 WL 3867563, at *7

("Orders approving interim fee requests are interlocutory and remain subject to review by this

Court at any time during the proceeding, and appropriate adjustments may be made at a later

date.").  Thus, the Applicant is entitled to seek an adjustment of the fees awarded in the interim

orders with respect to the Adversary Proceeding category.

Ms. Caiarelli also argues that the Applicant fails to disclose how it arrived at the

additional $50,918.35 it seeks from the Debtor's estate.  Specifically, she contends that the

Applicant fails to show how much was already allowed for the fees related to the Estate Counts

---

[17] The Rule 60(b) Motion filed by Ms. Caiarelli sought to vacate the Court's March 20, 2013 order that granted the motion to dismiss the Adversary Proceeding on the basis that Ms. Caiarelli lacked standing to prosecute the claims.

[18] The Dischargeability Counts included Counts I and II of the complaint which sought the determination of the dischargeability of a debt under 11 U.S.C. § 523(a)(4) and (a)(6).

[19] The Court approved this 25% allocation in the First, Second, Third, and Fourth Applications.  No objections were raised to the First, Second, and Third Applications.  Ms. Caiarelli objected to that allocation in the Fourth Application.  In ruling on that issue, the Court agreed with the Applicant's rationale for the 25% allocation of the fees in the Adversary Proceeding category to the estate.  The Court found that allocation both "fair and reasonable" and overruled Ms. Caiarelli's objection.  (Amended Order on Fourth Interim Application, p. 6.)

so that interested parties can understand the relationship between the existing 25% allocation and the proposed 50% allocation with respect to fees related to the Estate Counts and the Dischargeability Counts category. The Court rejects this argument. The Applicant has submitted all of its time entries related to the Adversary Proceeding category. (Fifth and Final Application, Exs. B & C.) Thus, interested parties are able to review the time spent by the Applicant in this category since the filing of the Adversary Proceeding. The additional $50,918.35 sought by the Applicant is the difference between the amount the Court awarded under the prior 25% allocation ($46,360.90) and the new proposed allocation ($97,279.25).

The Court agrees with the Applicant's proposed re-allocation of the fees incurred in the following categories: (1) Estate Counts; (2) Estate Counts and Dischargeability Counts; and (3) Dischargeability Counts. The Court finds that this re-allocation more closely approximates the time spent by the Applicant on matters related to the Adversary Proceeding.

However, the Court finds that the re-allocation with respect to the Rule 60(b) Motion is improper. The Rule 60(b) Motion sought to vacate the dismissal of the Adversary Proceeding and thereby reinstate the Estate Counts and the Dischargeability Counts. Thus, the fees incurred with respect to the Rule 60(b) Motion related to the litigation of the Estate Counts and the Dischargeability Counts category. The Court will treat the work performed in connection with the Rule 60(b) Motion the same as work performed in the Estate Counts and the Dischargeability Counts category and therefore will allow the Applicant only 50% of the fees sought in this category, and not 100% of the fees as requested by the Applicant. Accordingly, the Court allows $3,799.75 ($7,599.50 x .50) for fees related to the Rule 60(b) Motion.

The chart below summarizes the fees allowed pursuant to the re-allocation in the Adversary Proceeding category:

| | |
|---|---|
| Estate Counts | $10,124.50 |
| Estate Counts and Dischargeability Counts | $79,555.25 |
| Dischargeability Counts | $0.00 |
| Rule 60(b) Motion | $3,799.75 |
| **TOTAL** | **$93,479.50** |

However, Ms. Caiarelli has raised several objections to specific time entries of the Applicant in the First, Second, and Third Applications related to the Adversary Proceeding category. The Court will address those objections *infra*. For the reasons discussed below addressing the First, Second, and Third Applications, the total allowed fees for this category are $86,852.

**6.  Fee Applications Category**

In the Fee Applications category, the Applicant spent 69.30 hours of time and seeks fees of $24,793.50. According to the Applicant, the time spent in this category included the preparation of both the Fourth and Fifth Applications. Ms. Caiarelli objects to the fees sought in this category on two grounds: (1) the amount sought is in excess of the percentage typically allowed in this District and (2) the Applicant is not entitled to fees for defending the Fourth Application from her objections under *Baker Botts L.L.P. v. ASARCO LLC*, 135 S.Ct. 2158 (2015).

The Court will first address the fees sought by the Applicant for defending the Fourth Application. Ms. Caiarelli argues that, under the Supreme Court's decision in *ASARCO*, the Applicant is not entitled to the allowance of fees related to defending the Fourth Application. In *ASARCO*, the Supreme Court affirmed the Fifth Circuit's denial of fees to debtor's counsel for defending its fees from objections raised by the debtor. *Id.* at 2163. The Supreme Court found that the language of § 330(a)(1) did not displace the American Rule, under which "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute provides otherwise." *Id.* at 2164.

"[T]he phrase 'reasonable compensation for actual, necessary services rendered' [in § 330(a)(1)] neither specifically nor explicitly authorizes courts to shift the costs of adversarial litigation from one side to the other . . . as most statutes that displace the American Rule do." *Id.* at 2165.   The Court further stated that "[i]n our legal system, *no* attorneys, regardless of whether they practice in bankruptcy, are entitled to receive fees for fee-defense litigation absent express statutory authorization." *Id.* at 2168 (emphasis in original).   The Court held that time spent litigating a fee application against the administrator of a bankruptcy estate cannot be fairly described as "labor performed for" the benefit of an estate because it is the lawyers who benefit, and accordingly, fees incurred in defending the firm's fee application were not compensable from the estate. *Id.* at 2165, 2169.

The Applicant argues that Ms. Caiarelli advances an overly broad reading of *ASARCO* and states that where the dispute is between third-parties and the estate's professionals, as here, the time spent defending the fee application remains compensable. *See In re Macco Props., Inc.*, 540 B.R. 793, 877-78 (Bankr. W.D. Okla. 2015) (holding that defense of fees against third-party objections was a necessary service performed to assist the trustee in completing the administration of the case).   To the extent that the bankruptcy court in *Macco* determined that estate professionals are entitled to fee litigation expenses for defending their fees against attacks by third parties, that conclusion appears to be contrary to the Supreme Court's holding in the *ASARCO* case and this Court therefore rejects the Applicant's argument.   The Supreme Court determined that § 330(a)(1) does not authorize attorneys to be compensated for work performed in defending a fee application.   *ASARCO, 135 S.Ct. at 2164-65; see also Philadelphia v. Walker,* No. 15-01685, 2015 WL 7428501, at *4 (E.D. Pa. Nov. 23, 2015).

Further, the Applicant states that filing a brief in support of its Fourth Application should

not qualify as "litigation" or "defense" of fees under *ASARCO*. Here, the Applicant filed a reply brief in support of the Application, and after a hearing, a supplemental statement. The Applicant seeks to limit the holding in *ASARCO* to those situations in which more extensive litigation is involved—when the process more closely resembles a lawsuit that involves discovery, briefings, and an evidentiary hearing—not merely filing a brief in support of the Application. The Applicant does not provide any support for this proposition, and the Court cannot find any. The Supreme Court did not limit its holding to situations in which prolonged litigation, including discovery and an evidentiary hearing, is involved. Rather, *ASARCO* emphasized that § 330(a)(1) "reaches *only* the fee-application work." 135 S.Ct. at 2168 (emphasis added).

Accordingly, the Court finds that the Applicant is not entitled to compensation for work performed in defending its Fourth Application against Ms. Caiarelli's objection.[20] The expenditure of time in defense of the Fourth Application did not benefit the Debtor's estate. Rather, the time spent on this task solely benefitted the Applicant. Accordingly, the Court will not award the Applicant $5,743 in fees it seeks for defending the Fourth Application.

The Court will next address the Applicant's time spent on the preparation of the Fourth and Fifth Applications. The *ASARCO* decision did not change the general rule that allows professionals to be compensated for preparation of their fee applications.

Ms. Caiarelli objects to the Applicant's fees for preparation of the Fourth and Fifth Applications on the basis that the amount sought is "grossly in excess of the 3% cap recognized in this District." (Objection to Fifth and Final Application, p. 8, ¶ 29.) She contends that the maximum allowed for this category is $2,256.66, which constitutes 3% of the total fees sought

---

[20] The following time was spent by the Applicant in defense of its Fourth Application: (1) 09/08/14 1.0 hour SBT $695; (2) 09/08/14 7.20 hours DRD $2,232; (3) 09/29/14 DRD 3.40 hours $1,054; (4) 09/30/15 1.70 hours DRD $527; (5) 11/05/14 .20 hours SBT $139; (6) 11/13/14 .80 hours SBT $556; (7) 11/13/14 TGB .70 hours $315; (8) 11/23/14 TGB .20 hours $90; and (9) 11/24/14 TGB .30 hours $135. (Fifth and Final Application, Ex. A at pp. 14-15.) These fees total $5,743.

by the Applicant during the Fifth Application period ($75,222 x .03). (*Id.*)

Courts in this District award fees incurred in the preparation of fee applications, generally allowing 3-5% of the total amount sought. *See, e.g., In re Spanjer Bros., Inc.*, 203 B.R. 85, 93 (Bankr. N.D. Ill. 1996) (limiting compensation to 5% of the total fees sought); *In re Wildman*, 72 B.R. 700, 711 (Bankr. N.D. Ill. 1987) (limiting compensation to 3% of the total fees sought). However, in limited circumstances, courts have also allowed 10% of the total amount sought. *See In re Churchfield Mgmt. & Inv. Corp.*, 98 B.R. 838, 867 (Bankr. N.D. Ill. 1989). The Court will award the Applicant 5% of the total fees sought from the estate for preparation of the fee applications.

In the Fifth Application, the Applicant seeks a total of $24,793.50 in compensation for time spent on the Fourth and Fifth Applications. The Court has already determined that $5,743 of that sum relates to work performed in defense of the Fourth Application and that amount will not be allowed. Thus, the fees sought by the Applicant for preparation of the Fourth and Fifth Applications total $19,050.50 ($24,793.50 - $5,743).

The portion of the fees sought by the Applicant for preparation of the Fourth Application totals $10,102.50.[21] In the Fourth Application, the Applicant sought fees of $163,420.50, but the Court only allowed $48,189.71 in fees. Five percent of the total fees sought in the Fourth Application is $8,171 ($163,420.50 x .05). The Court finds that the Applicant has not shown that the work it performed in this case warrants deviation from the generally accepted 5% cap in

---

[21] The Applicant states that it only seeks $4,346.50 for preparing the Fourth Application. (Reply in Support of Fifth and Final Application, p. 6 at ¶ 13.) The Applicant does not explain how it arrived at this figure. A review of the time entries associated with the preparation of the Fourth Application shows that the Applicant spent time that totals $10,102.50. The following time entries comprise this figure: (1) 08/06/14 DRD $1,209; (2) 08/07/14 SBT $347.50; (3) 08/07/14 DRD $868; (4) 08/08/14 DRD $527; (5) 08/11/14 DRD $155; (6) 08/12/14 DRD $837; (7) 08/14/14 DRD $589; (8) 08/15/14 DRD $31; (9) 09/09/14 DRD $217; (10) 09/09/14 SBT $347.50; (11) 09/23/14 SBT $1,251; (12) 09/24/14 TGB $180; (13) 09/30/14 SBT $347.50; (14) 10/02/14 SBT $556; (15) 10/13/14 DRD $434; (16) 10/21/14 DRD $217; (17) 10/22/14 DRD $217; (18) 10/27/14 DRD $124; (19) 11/13/14 DRD $62; (20) 11/24/14 SBT $139; (21) 11/24/14 SBT $208.50; (22) 11/26/14 DRD $620; (23) 12/09/14 DRD $496; (24) 12/10/14 TGB $90; and (25) 07/23/15 DRD $32.50.

this District. As result, the Applicant will be limited to $8,171 for the preparation of the Fourth

Application. Thus, the Court disallows $1,931.50 ($10,102.50 - $8,171).

With respect to the Fifth Application, the Applicant seeks $8,948 for the preparation of

this Application.[22] The fees sought for the Fifth Application period are $75,222. Five percent of

that amount is only $3,761 ($75,222 x .05). The Court again finds that the Applicant has not

shown that it is entitled to more than the standard maximum amount of 5%. As a result, the

Applicant will be limited to $3,761 for the preparation of the Fifth Application. Therefore, the

Court disallows $5,187 ($8,948 - $3,761).

In sum, the Court allows the Applicant $8,171 for the preparation of the Fourth

Application and $3,761 for the preparation of the Fifth Application for a total of $11,932. The

Court disallows $12,861.50 ($5,743 + $1,931.50 + $5,187) in fees sought in the Fee Applications

category.

### 7. Expense Reimbursement

The Applicant seeks reimbursement of expenses in the Fifth Application in the sum of

$936.82.[23]

Section 330(a)(1)(B) allows the Court to award the Applicant "reimbursement for actual,

necessary expenses." 11 U.S.C. § 330(a)(1)(B). The Applicant bears the burden of establishing

that it is entitled to certain expenses. *See In re Convent Guardian Corp.*, 103 B.R. 937, 939

---

[22] The Applicant states that it seeks "approximately $8,809" in fees for preparation of the Fifth Application. (Reply in Support of Fifth and Final Application, p. 7 at ¶ 14.) The Applicant does not explain how it arrived at this amount. The Court's examination of the time entries for this work reveals that the Applicant actually seeks $8,948. The following time entries comprise this figure: (1) 09/10/15 DRD $845; (2) 09/11/15 DRD $162.50; (3) 09/14/15 DRD $520; (4) 09/15/15 DRD $390; (5) 09/16/15 TGB $230; (6) 09/16/15 DRD $1,007.50; (7) 09/18/15 DRD $357.50; (8) 09/21/15 DRD $780; (9) 09/22/15 DRD $390; (10) 09/25/15 DRD $1,397.50; (11) 09/28/15 DRD $130; (12) 10/12/15 DRD $1,170; (13) 10/13/15 DRD $97.50; (14) 10/20/15 DRD $130; (15) 10/22/15 DRD $162.50; (16) 10/24/15 TGB $138; (17) 10/27/15 DRD $585; (18) 11/04/15 DRD $357.50; and (19) 11/05/15 DRD $97.50.

[23] As noted in footnote 3 *supra*, the Applicant voluntarily reduced the amount of expense reimbursement it originally sought. The Court will further discuss those reductions *infra*.

22

(Bankr. N.D. Ill. 1989). An expense is necessary if it was incurred because it was required to accomplish the proper representation of the client. *Wildman*, 72 B.R. at 731. A fee application should include a detailed itemization of the expenses for which reimbursement is sought, including the date the expense was incurred, the type of expense, and the amount. *Id.* Reimbursement is allowed only for those expenses that are fully documented and are actual, out-of-pocket expenses. *Id.*

Ms. Caiarelli objects to two categories of expenses—outside photocopying and Westlaw charges. First, Ms. Caiarelli objects to the reimbursement of $477.50 in photocopying charges on January 29, 2015[24] and $145 on April 16, 2015. The Applicant has withdrawn its request for reimbursement of these charges. Thus, the Court need not further address this objection.

Second, Ms. Caiarelli objects to the entire $4,834.24 sought by the Applicant for reimbursement of its Westlaw charges on the basis that such charges were not allocated between compensable and non-compensable categories, and no detail was provided for those expenses. In addition, Ms. Caiarelli argues that the Applicant's reliance on Westlaw ignores comparable services, such as Fastcare, which charge $995 per year with no search fees. Ms. Caiarelli contends that the Applicant inefficiently used technology. The Applicant agreed to withdraw its request for all Westlaw charges identified as relating to the Appeal category or the exemption work. The Applicant is now only requesting reimbursement of $936.82 in Westlaw charges.[25]

The Court adopts the view that computer research that is both necessary and attributable to a certain client or case is reimbursable. *See Wildman*, 72 B.R. at 731-32. The Court will not penalize the Applicant because it used Westlaw for its legal research instead of some other less

---

[24] Ms. Caiarelli mistakenly references November 29, 2014 as the date the photocopying charges were incurred. After reviewing the Application, however, the Court was unable to find a charge on that date in this amount. The Court assumes that Ms. Caiarelli was referring to the January 29, 2015 date.

[25] Those charges were incurred on September 30, 2014 in the following amounts: $106.60, $420.42, $84.26, $111.31, $54.51, $134.78, and $24.94.

expensive service.  Westlaw is a trusted research tool, and the fact that there may be another less expensive online service available does not make the Applicant's use of Westlaw an "inefficient use of technology" as Ms. Caiarelli claims.  Thus, the Court overrules Ms. Caiarelli's objection to the Applicant's request for reimbursement of its Westlaw charges on this basis.

The Court, however, finds that the Applicant has not sufficiently detailed the reduced expenses related to the Westlaw research.  While the Court routinely reimburses professionals for online legal research and does not consider such an expense to be overhead, the Court requires those charges to be detailed.  Here, the Applicant simply documented the eight Westlaw charges as "Westlaw; (SBT); West Group" or "Westlaw; (DRD); West Group."  These descriptions provide no detail regarding the topic that was researched.  As a result, the Court cannot determine whether these expenses were actual and necessary to accomplish the proper representation of the Debtor.  The Court sustains Ms. Caiarelli's objection to the Westlaw charges on the basis that there is insufficient detail provided for these charges.  Thus, the Applicant will not be reimbursed for any of its expenses incurred during the Fifth Application period.

### 8.  Hourly Billing Rate of Steven B. Towbin and Tasks Performed By Him

Ms. Caiarelli objects to the hourly billing rate charged by one of the Applicant's name partners, Steven B. Towbin.  Mr. Towbin's hourly rate for the services he performed in connection with this case is $695-$710.[26]  Ms. Caiarelli argues that this level of billing was not warranted in this case and should be reserved for large, complex corporate cases, not individual debtor cases.  She states that the Applicant has not provided any explanation for Mr. Towbin's continued involvement in the case during the Fifth Application period.  According to Ms. Caiarelli, during this period—August 1, 2014 through November 12, 2015—the case did not

---

[26] According to the Fifth Application, Mr. Towbin's hourly rate in 2014 was $695 and increased to $710 in 2015.

24

involve difficult issues that required the skills of an attorney who billed at $695-$710 per hour. She points to the following matters that arose during this time period in support of her proposition: (1) the motion to compel the Debtor to comply with post-confirmation reporting; (2) the motion to confirm that the Debtor would not pursue her for violating the discharge injunction; and (3) the motion to confirm the assets that were transferred under the confirmed plan. Ms. Caiarelli argues that because the Debtor's plan had been confirmed and no material deadlines existed, attorneys billing at more modest rates should have performed the tasks during the Fifth Application period.

First, the Court will address Ms. Caiarelli's challenge to Mr. Towbin's hourly billing rate. The Seventh Circuit has defined a reasonable hourly rate as one that is "'derived from the market rate for the services rendered.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). The market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the kind of work in question." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). The best evidence of an attorney's market rate is the attorney's actual billing rate for similar work. *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012); *Moore v. Watson*, No. 09 C 0701, 2013 WL 1337153, at *4 (N.D. Ill. Mar. 29, 2013). The burden of proving the market rate is on the party seeking fees. *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). If the fee applicant meets this burden, the burden then shifts to the objecting party to show why a lower rate is essential. *Pickett*, 664 F.3d at 640.

In support of its application to be employed as counsel for the Debtor, the Applicant stated that the Debtor agreed to compensate the Applicant according to its standard rates for cases that are similar in size, complexity, and intensity. (Dkt. No. 48, Application to Employ

Shaw Gussis, p. 5 at ¶ 15.)  The Applicant attached a list of the standard hourly rates for all of its attorneys and paralegals.  (*Id.* at Ex. B.)  The Applicant also provided a verified declaration from Mr. Towbin pursuant to Federal Rule of Bankruptcy Procedure 2014(a).  (*Id.* at Ex. A.)  In that declaration, Mr. Towbin stated that the Debtor agreed to compensate the Applicant according to its standard rates for similar cases.  (*Id.* at ¶ 6.)    Additionally, in the Fifth Application, the Applicant states that "[t]he hourly rates charged by [the Applicant] with respect to the Debtor's case compare favorably with the rates charged by other Chicago metropolitan firms having attorneys and paralegals with similar experience and expertise as the [Applicant's] attorneys and paralegals." (Fifth and Final Application, p. 7 at ¶ 18.)

The Court finds that based on these documents, the Applicant has shown that Mr. Towbin's hourly rate of $695-$710 is the relevant market rate and is reasonable.  The burden then shifts to Ms. Caiarelli to show a good reason why a lower rate is essential.  Ms. Caiarelli has failed to meet this burden.  She offers no rebuttal evidence other than her argument that this level of billing should be reserved for large, complex, corporate cases, not individual debtor cases. Her argument, without more, does not establish that Mr. Towbin's hourly rate is not the market rate.  *See Pressley v. Haeger*, 977 F.2d 295, 299 (7th Cir. 1992) (finding that court was required to award attorneys their billing rates where the opposing party failed to submit any evidence to contest that those were the market rates).  Thus, the Court overrules Ms. Caiarelli's objection to Mr. Towbin's billing rate.

Finally, the Court will address Ms. Caiarelli's assertion that the tasks performed during the Fifth Application period did not warrant the services of Mr. Towbin billing at his hourly rate. During the Fifth Application period, Mr. Towbin spent 47.7 hours of time and incurred fees of $33,396 (31.40 hours x $695 = $21,823 + 16.30 hours x $710 = $11,573).  (Fifth and Final

Application, p. 7 at ¶ 17.)  However, the Applicant does not seek allowance of all of these fees. For example, Mr. Towbin spent time on tasks in the Appeal category and the Discharge Injunction Violation category.  The Applicant does not seek any fees from the Debtor's estate for the work performed in these categories.  Thus, not all of the $33,396 in fees charged by Mr. Towbin is being sought from the estate.

In response to Ms. Caiarelli's objection, the Applicant states that Mr. Towbin had to spend some time on the case in order to be acquainted with the issues raised.  The Applicant contends that Mr. Towbin spent far less time than other lower-billing attorneys.  After reviewing the Fifth Application, the Court agrees that Mr. Towbin spent far less time during the application period than several other attorneys who were billing at a lower hourly rate.  The Court will not engage in a wholesale cut of Mr. Towbin's time absent more specific objections to the time entries in the Application.  The Court therefore overrules Ms. Caiarelli's objection on this point.

### 9.  <u>Summary of the Fees and Expenses Allowed in the Fifth Application Period</u>

### <u>APPLICANT'S FEES</u>

| Category | Fees Sought | Amount Disallowed | Amount Allowed |
|---|---|---|---|
| Case Administration | $32,083.50 | $5,872.50<br>$2,015.50<br>$1,242<br>$347.50<br>$208.50<br>$695 | $21,702.50 |
| Mediation | $16,737 | $0.00 | $16,737 |
| Pre-Petition Litigation | $1,329 | $0.00 | $1,329 |
| Sale of Property | $279 | $0.00 | $279 |
| Adversary Proceeding | $0.00 | $0.00 | $0.00 |
| Fee Applications | $24,793.50 | $5,743<br>$1,931.50<br>$5,187 | $11,932 |
| Appeal | $0.00 | $0.00 | $0.00 |

| Discharge Injunction Violation | $0.00 | $0.00 | $0.00 |
| **TOTAL** | **$75,222** | **$23,242.50** | **$51,979.50** |

## APPLICANT'S EXPENSES

| Expenses Sought | Amount Disallowed | Amount Allowed |
| :---: | :---: | :---: |
| $936.82 | $936.82 | $0.00 |

## B. Objection to the Final Approval of the First, Second, and Third Applications

Ms. Caiarelli has set forth specific objections to the Applicant's First, Second, and Third Applications. The Court will address each Application in turn.

### 1. Objection to the First Application

In the First Application, the Applicant only sought for a portion of the fees it incurred to be assessed against the Debtor's estate because the Applicant recognized that some of the services rendered were solely for the benefit of the Debtor and not the estate. The Debtor's mother guaranteed the payment of the Applicant's fees in the event there were insufficient funds in the Debtor's estate. Accordingly, the Court allowed compensation of $149,490 but only $114,022.38 was to be paid from the Debtor's estate. The Applicant was awarded expense reimbursement of $5,489.68.

The Court will address only the fees that are being sought by the Applicant from the estate. The agreement between the Applicant and the Debtor's mother for the payment of the Applicant's fees has no bearing on whether fees sought under § 330 should be awarded as reasonable compensation for actual and necessary services rendered by the professional. "[T]he fee application process is only applicable to professionals seeking payment from the estate." *In re Threestrands by Grace, LLC*, No. 12-00756-JKC-11, 2012 WL 1986434, at *6 (Bankr. S.D. Ind. June 1, 2012); *see also Barron v. Countryman*, 432 F.3d 590, 595 (5th Cir. 2005).

("Importantly, § 330 is not applicable to attorney fees derived from a source other than the debtor's estate."). As a result, the Court will not rule on any fees that are not being sought from the Debtor's estate. The Court will address Ms. Caiarelli's specific objections to the compensation and expenses previously awarded with respect to the First Application.

Ms. Caiarelli first objects to time spent by the Applicant in the Adversary Proceeding category. She argues that the Applicant utilized one of its most senior attorneys, Mr. Towbin, billing at $650 per hour, for services which should have been performed by a junior attorney, and the Applicant improperly billed for other attorneys performing paralegal work. She points to numerous time entries in which she contends that Mr. Towbin's expertise and billing rate was not necessary or reasonable. First, on 08/13/12,[27] Mr. Towbin spent 1.80 hours for fees of $1,170 researching issues involving "jury right regarding constructive trust/equitable liens," and on 08/15/12,[28] he spent 1.0 hours for $650 in fees researching "523(a)(4) fiduciary standard." The Applicant is not seeking fees from the estate for the time spent on 08/15/12 because it relates to work performed with respect to the Dischargeability Counts; thus, Ms. Caiarelli's objection to this time entry is moot. The Court will only address the 08/13/12 entry which relates to the Estate Counts category.

"A senior partner who spends time reviewing documents or doing research a beginning associate could do will be paid at the rate of a beginning associate." *Pettibone*, 74 B.R. at 303. "Senior partner rates will be paid only for work that warrants the attention of a senior partner." *Id.* The Court finds that the research performed by Mr. Towbin regarding the fiduciary standard under § 523(a)(4) did not require the skill and level of experience held by a senior attorney.

---

[27] This time entry falls under the Estate Counts for which the Court found 100% of the time will be assessed against the Debtor's estate. (*See* pp. 15-17.)

[28] This time entry falls under the Dischargeability Counts for which the Applicant does not seek compensation from the Debtor's estate. (*See id.*)

Rather, the work should have been performed by a junior attorney billing at a lower rate. Accordingly, the Court will reduce the fees sought by 50% for a total of $585 ($1,170 x .50) which represents what a junior attorney at the Applicant's firm would have billed for this work. Thus, the Court will allow only $585 for the time spent on this research. Accordingly, $585 is disallowed.

In this same category, Ms. Caiarelli objects to fees sought by the Applicant for time spent by Mr. Towbin drafting a motion to dismiss the Adversary Proceeding filed by Ms. Caiarelli against the Debtor. According to Ms. Caiarelli, this time spent by Mr. Towbin appears to be original drafting and not reviewing or editing the motion and thus should have been performed by a junior attorney. She objects to the following time entries: (1) 08/14/12 .80 hours $520; (2) 08/15/12 1.50 hours $975; (3) 08/16/12 .80 hours $520; (4) 08/17/12 1.50 hours $975; (5) 08/17/12 3.70 hours $2,405; (6) 08/20/12 4.0 hours $2,600; (7) 08/21/12 3.50 hours $2,275; and (8) 08/22/12 1.40 hours $910.

The Applicant is not seeking compensation for the time entries listed above at (2), (3), and (4) because these entries fall under the Dischargeability Counts. Thus, Ms. Caiarelli's objections to these time entries are moot.

The time entries listed above at (1), (5), (6), (7), and (8) relate to the Estate Counts and the Dischargeability Counts category. These entries total 13.40 hours for fees of $8,710. The Applicant is seeking the allowance of only 50% of these fees from the estate and the Court has agreed with that allocation. (*See* pp. 15-17.) Accounting for this allocation, the Applicant is effectively seeking only 50% of the 13.40 billed hours or 6.70 hours for a total of $4,355 (6.70 hours x $650).

Courts have recognized the propriety of dividing work between a senior and junior

attorney. *Reed v. Astrue*, No. 08-C-5604, 2010 WL 669619, at *3 (N.D. Ill. Feb. 19, 2010).

Indeed, it is common for a junior attorney to draft and prepare motions for the senior attorney to

review. *Illiana Surgery & Med. Ctr. LLC v. Hartford Fire Ins. Co.*, No. 2:07CV3, 2014 WL

1094455, at *9 (N.D. Ind. Mar. 19, 2014). "It is entirely appropriate (and indeed reflects the

realities of the market) that a senior attorney will guide and advise a junior attorney rather than

take the laboring oar with respect to researching and drafting briefs." *Reed*, 2010 WL 669619, at

*3 (internal quotation omitted). Thus, the Court finds that the use of Mr. Towbin to draft the

motion to dismiss was not reasonable. Accordingly, the Court reduces this time by 50% and

allows only $2,177 ($4,355 x .50). This amount reflects what a junior attorney would have billed

at a rate of $325 per hour. Therefore, the Court disallows $2,177.

In the Case Administration category, Ms. Caiarelli objects to the following time spent by

Mr. Towbin on the basis that such tasks should have been performed by a junior attorney: (1)

04/23/12 .50 hours $325; (2) 04/24/12 .10 hours $65; (3) 04/25/12 .10 hours $65; (4) 04/26/12

.10 hours $65; (5) 04/27/12 .20 hours $130; (6) 05/18/12 .40 hours $260; (7) 05/18/12 .50 hours

$325; (8) 05/22/12 1.0 hour $650; (9) 05/28/12 .60 hours $390; (10) 06/11/12 .10 hours $65; (11)

06/18/12[29] .40 hours $260; (12) 06/21/12 1.70 hours $1,105; (13) 06/21/12 1.80 hours $1,170;

and (14) 08/13/12 .30 hours $195.[30] The total time spent on these tasks was 7.80 hours for fees

of $5,070.[31] In these time entries, Mr. Towbin spent time corresponding with the United States

Trustee's office regarding the § 341 meeting and the initial debtor-in-possession meeting; phone

conferences regarding insurance certificates; preparing for and attending the § 341 meeting; and

---

[29] Ms. Caiarelli refers to a time entry by Mr. Towbin on 06/15/12, but no entry for that date exists. The Court assumes she is referring to the entry on 06/18/12 based upon her objection to the task he performed and the amount sought.

[30] Ms. Caiarelli states that the time spent by Mr. Towbin on this date totals $95. However, the entry reflects fees of $195.

[31] Ms. Caiarelli mistakenly states that these entries total $4,970. The $100 difference relates to the error referenced in footnote 30.

reviewing and filing a monthly operating report.

The Court finds that the time spent by Mr. Towbin on 06/21/12 (3.50 hours x $650 = $2,275) preparing the Debtor for the § 341 meeting and attending that meeting was both reasonable and necessary and does not constitute routine case management. However, the remainder of the 4.30 hours spent by Mr. Towbin corresponding with the United States Trustee's office and conferencing regarding insurance certificates did not require the skills of an attorney. Those tasks should have been performed by the Applicant's paralegal at an hourly rate of $190, not a senior attorney billing at $650 per hour. Thus, the Court allows $817 for this task (4.30 hours x $190). Accordingly, the Court disallows $1,978 ($5,070 - $2,275 - $817).

Finally, in the Case Administration category, Ms. Caiarelli objects to $132 in fees sought by the Applicant for a total of .40 hours of time spent by Ms. Kimberly A. Bacher on 04/23/12 and 04/27/12 (.40 hours x $330). These two time entries relate to work regarding a notice list and obtaining PIN numbers for property. Ms. Caiarelli argues that these tasks performed by Ms. Bacher constitute non-legal work that should have been performed by a paralegal.

"[N]on-legal work performed by a lawyer which could have been performed by less costly non-legal employees should command a lesser rate." *Wildman*, 72 B.R. at 710. It is unreasonable for an attorney to bill time at her normal hourly rate for tasks which can and should be performed by a paralegal. *In re Bond*, 271 B.R. 590, 592 (Bankr. C.D. Ill. 2000). The Court finds that the time spent by Ms. Bacher regarding a notice list and PIN numbers was not legal work and should have been performed by a paralegal. Accordingly, the Court will reduce the amount of fees sought for these tasks. The Applicant charges $190 per hour for services provided by its paralegals. Thus, the Court will allow only $76 for this time (.40 hours x $190). Accordingly, $56 is disallowed ($132 - $76).

Next, in the Cash Collateral category, Ms. Caiarelli objects to the following time spent by Mr. Towbin on the basis that these tasks did not require the expertise of a senior attorney: (1) 04/24/12 .80 hours $520; (2) 04/25/12 .80 hours $520; (3) 04/25/12 .30 hours $195; and (4) 05/17/12 2.30 hours $1,495. Mr. Towbin spent 4.20 hours of time and the fees sought in these entries total $2,730. The time expended by Mr. Towbin related to drafting a declaration in support of a cash collateral motion and preparing a response to Ms. Caiarelli's objection to the cash collateral order. The Court finds that it was not reasonable for Mr. Towbin to draft these documents. This work did not warrant the attention of a senior partner. Therefore, the Court will reduce the fees sought for this time spent by 50% which represents the rate charged by a junior attorney. The Court will allow only $1,365 for these services ($2,730 x .50). Thus, the Court disallows $1,365 ($2,730 - $1,365).

Finally in this category, Ms. Caiarelli objects to the 2.60 hours of time spent on 04/26/12 by Ms. Bacher on the basis that she performed paralegal work. The Applicant provided the following description of the time spent by Ms. Bacher: "Prepare notice of final hearing and prepare service list and certificate of service and review, edit and revise same (1.2); Prepare final draft of cash collateral order and review, edit and revise same (.6); Prepare for and attend hearing on cash collateral (.8)."

The Court has reviewed this time entry and partially sustains the objection. The Court agrees that the 1.20 hours spent preparing the notice of final hearing, the service list, and certificate of service, and reviewing, revising, and editing that document was a task that did not require the skill of an attorney. Thus, the Court will not allow the $396 charged by the Applicant for this service (1.20 hours x $330). However, the Court will allow $228 for this time spent at the rate charged by a paralegal (1.20 hours x $190). Accordingly, the Court disallows $168

($396 - $228).

With respect to the remainder of the time spent by Ms. Bacher, the Court finds that the preparation of a final cash collateral order and the appearance in court for the hearing on the cash collateral motion was both reasonable and necessary time spent by an attorney, not a paralegal. Thus, the Court overrules Ms. Caiarelli's objection to this portion of the time entry.

In the Creditors and Claims category, Ms. Caiarelli points to certain time spent by Mr. Towbin drafting routine motions and conducting basic research. She objects to the following entries: (1) 04/26/12 .40 hours $260; (2) 05/17/12 1.0 hour $650; (3) 05/24/12 .80 hours $520; (4) 05/24/12 .30 hours $195; (5) 07/16/12 .80 hours $520; (6) 07/19/12 1.50 hours $975; and (7) 07/22/12 2.0 hours $1,300. These time entries total 6.80 hours spent and fees requested of $4,420.

The Court agrees with Ms. Caiarelli that these tasks did not require the level of skill and experience possessed by a senior attorney. Rather, a junior attorney billing at a lower hourly rate should have performed these services. Thus, the Court will allow only 50% of the amount sought for these services for a total of $2,210 ($4,420 x .50), which represents what a junior attorney would have billed for this time. Accordingly, the Court disallows $2,210.

Next, in the Disclosure Statement and Plan category, Ms. Caiarelli objects to the following time spent by Mr. Towbin on the basis that he drafted routine documents and performed basic research: (1) 05/28/12 3.50 hours $2,275; (2) 05/29/12 2.10 hour $1,365; (3) 05/29/12 2.20 hours $1,430; (4) 05/30/12 3.0 hours $1,950; (5) 05/30/12 1.0 hours $650; (6) 05/31/12 1.80 hours $1,170; (7) 06/01/12 .30 hours $195; (8) 06/01/12 .30 hours $195; (9) 06/01/12 .10 hours $65; (10) 06/01/12 .20 hours $130; (11) 07/17/12 .60 hours $390; (12) 07/18/12 1.50 hours $975; (13) 07/19/12 1.0 hours $650; (14) 07/20/12 1.50 hours $975; (15)

07/23/12 1.0 hour $650; (16) 08/03/12 .40 hours $260; and (17) 08/07/12 .40 hours $260. These entries total 20.90 hours of time spent and fees sought of $13,585. The bulk of the time spent by Mr. Towbin was drafting the Debtor's disclosure statement and plan and preparing a response to Ms. Caiarelli's objection to the disclosure statement.

While the Court does not agree with Ms. Caiarelli that a plan and disclosure statement are necessarily routine documents, the Court concurs that a junior attorney should have taken the laboring oar with respect to drafting these documents and performing the research. It is perfectly reasonable for a junior attorney to spend several hours drafting a document, have a senior attorney review it, discuss that attorney's comments, and spend several hours incorporating the suggestions. Here, however, the senior partner drafted the documents and researched the issues without turning over those tasks to a junior attorney. These services did not warrant the level of expertise held by a senior attorney. Hence, the Court sustains Ms. Caiarelli's objection to the time spent by Mr. Towbin on these tasks. As a result, the Court will allow only $6,792.50 which represents 50% of the fees sought for these services ($13,585 x .50). This figure represents what a junior attorney would have billed for these tasks. Accordingly, the Court disallows $6,792.50.

Also in the Disclosure Statement and Plan category, Ms. Caiarelli objects to the following time spent by Mr. Towbin conducting Westlaw research: (1) 05/18/12 .40 hours $260;[32] (2) 05/25/12 1.30 hours $845; (3) 07/16/12 1.50 hours $975; and (4) 07/17/12 1.0 hour $650. Mr. Towbin spent 4.20 hours performing this research and seeks fees of $2,730.

The Court finds that this research did not require the skill and level of experience held by a senior attorney. Rather, the work should have been performed by a junior attorney billing at a

---

[32] Ms. Caiarelli refers to the sum of $195 for this entry, but she is mistaken. On 05/18/12, Mr. Towbin charged $195 for services regarding "[t]elephone conference with client regarding plan, Form22B and related matters." This task does not relate to Westlaw research. However, on that same date, Mr. Towbin spent .40 hours for a total fee of $260 reviewing "Norton treatise on 1115 and 1129(a)(15)(B) issues and Official Form 22B." The Court assumes that this is the time entry that Ms. Caiarelli finds objectionable.

lower rate.  Accordingly, the Court reduces the fees sought by 50% for a total of $1,365 ($2,730 x .50).  Therefore, the Court disallows $1,365.

Finally in this category, Ms. Caiarelli objects to two time entries of Ms. Bacher on the basis that such work should have been performed by a paralegal.  On 06/13/12 and 08/09/12, Ms. Bacher spent .30 hours and .80 hours, respectively, for a total of $363 preparing a certificate of service for the disclosure statement and plan.  The Court agrees that this task did not require the skills of an attorney and should have been performed by a paralegal.  As a result, the Court will only allow this time spent to be charge at the $190 hourly rate of the Applicant's paralegal.  Thus, the Court allows $209 for these services (1.10 hours x $190), not the $363 sought by the Applicant.  Accordingly, the Court disallows $154 ($363 - $209).

Further, in the Discovery category, Ms. Caiarelli objects to the following time entries of Mr. Towbin: (1) 06/01/12 1.80 hours $1,170; (2) 06/14/12 1.0 hour $650; (3) 06/14/12 .20 hours $130; (4) 06/14/12 .10 hours $65; (5) 06/14/12 .10 hours $65; and (6) 06/14/12 .40 hours $260.[33] This time totals 3.60 hours and fees of $2,340.  Ms. Caiarelli contends that he drafted routine documents that did not require the expertise of a senior attorney.

Based upon a review of the time entries, it appears that Mr. Towbin drafted a confidentiality agreement regarding Ms. Caiarelli's documents and he exchanged emails with the United States Trustee's office with respect to insurance policies.  The Court agrees with Ms. Caiarelli that these tasks did not warrant the expertise of a senior attorney billing at $650 per hour.  Thus, the Court will allow only 50% of the fees sought for a total of $1,170 ($2,340 x .50), which represents what a junior attorney would have billed for these services.  Accordingly, the

---

[33] Ms. Caiarelli also objects to a time entry of Mr. Towbin on 06/14/12 for work performed regarding a "website review" for fees of $325.  (Supplement to Objection to Fifth and Final Application, p. 5.)  However, there is no entry that corresponds to that date, amount, or task performed.  In fact, the Court has reviewed all of the time entries in the Discovery category and can find no such entry.

Court disallows $1,170.

Next, in the Examiner Motion category, Ms. Caiarelli objects to the following time entries where Mr. Towbin performed Westlaw and other research and drafted routine documents: (1) 06/20/12 2.0 hours $1,300; (2) 06/21/12 .50 hours $325; (3) 06/24/12 6.0 hours $3,900; (4) 06/25/12 3.50 hours $2,275; (5) 06/26/12 2.0 hours $1,300; (6) 06/27/12 .50 hours $325; (7) 06/30/12 3.50 hours $2,275; and (8) 07/02/12 3.0 hours $1,950.   Mr. Towbin spent 21 hours performing these tasks and the fees sought total $13,650.

Mr. Towbin spent time researching and drafting pleadings regarding Ms. Caiarelli's motion to appoint an examiner.   The Court finds that it was not necessary or reasonable to have Mr. Towbin, a senior attorney, researching the relevant case law on the appointment of an examiner and drafting the Debtor's response and sur-reply to that motion.   Accordingly, the Court will reduce this time by 50% and allow only $6,825 ($13,650 x .50).   This figure reflects what a junior attorney would have billed for these services.   Thus, the Court disallows $6,825.

Additionally, Ms. Caiarelli objects to certain time entries in the Adversary Proceeding category on the basis that Mr. Towbin duplicated work performed by another attorney, Terrance G. Banich, because he charged for conferencing.   She points to the following entries as objectionable: (1) 08/09/12 .50 hours $207.50; (2) 08/13/12 .50 hours $207.50; (3) 08/15/12 .60 hours $249; and (4) 08/17/12 4.50 hours $1,867.50.   These time entries relate to the Estate Counts and the Dischargeability Counts category, wherein only 50% of the billed time was sought and allowed.

These entries referred to by Ms. Caiarelli do not reflect time spent by Mr. Towbin. Instead, they represent time spent by Mr. Banich conferring with Mr. Towbin.   There are no corresponding time entries whereby Mr. Towbin also charged the Debtor's estate for the

conference.  Because only one attorney charged for the conference, the Court overrules Ms.
Caiarelli's objection.

Next, Ms. Caiarelli objects to the .40 hours of time spent by Mr. Towbin on 05/15/12 in
the Cash Collateral category for fees of $260 because that work duplicated time spent by Ms.
Bacher.  Both Mr. Towbin and Ms. Bacher reviewed the objection to the cash collateral order.
The order and objection were not particularly complex or novel and therefore did not require
more than one attorney to handle this task.  Reasonable time spent does not necessarily include
all time actually expended.  *Spanjer Bros.*, 191 B.R. at 748.  "Compensation will not be awarded
for . . . time spent on services that are duplicative of previously rendered services.  Duplication
of services constitutes an unreasonable expenditure of time and therefore is noncompensable."
*Id.* at 749.  The Court sustains this objection.  Mr. Towbin's services were duplicative of Ms.
Bacher's work and, therefore, the Court disallows the $260 in fees charged by him.

Ms. Caiarelli next objects to time billed by the Applicant that, according to her, did not
benefit the Debtor's estate.  She alleges that certain tasks performed only benefitted the Debtor
personally and thus the fees incurred should not be paid from the estate.  First, in the Adversary
Proceeding category, Ms. Caiarelli points to two time entries where the Applicant conferenced
with the Debtor's wife: (1) 08/03/12 SBT .40 hours $260 and (2) 08/22/12 SBT .20 hours $130
for a total of $390 in fees.  These time entries relate to the Estate Counts and the Dischargeability
Counts category, wherein only 50% of the billed time was sought and allowed.  Because the
Court already accounted for the fact that approximately one-half of the time entries in this
category related to work that was performed on behalf of the Debtor, and not the estate, a further
reduction of these entries is unnecessary.  Thus, Ms. Caiarelli's objection to these time entries is
overruled.

Ms. Caiarelli also objects to $65 billed by the Applicant for conferencing with the Debtor's wife for .10 hours on 06/04/12 in the Discovery category. The Court finds that the Applicant has failed to demonstrate how this work was beneficial to the estate rather than to the Debtor personally. Therefore, the Court sustains Ms. Caiarelli's objection to this time and disallows the $65 in fees.

Next, Ms. Caiarelli objects to the $6,450.50 in fees sought in the Exemption Objections category. She claims that the time spent in this category was personal to the Debtor and should not be charged to the estate. The Applicant does not dispute this point and does not seek any fees from the Debtor's estate for these services. Indeed, the First Application makes it clear that the Applicant "does not seek any fees herein in connection with services rendered in matters related to the Exemption Objections." (First Interim Application, p. 4 at ¶ 13.) Accordingly, the Court overrules Ms. Caiarelli's objection.

Next, Ms. Caiarelli contends that although the Applicant only assessed 25% of the fees incurred in the Adversary Proceeding category to the Debtor's estate, that percentage was not applied to the First Application. Thus, Ms. Caiarelli argues that there was a $38,689.50 overcharge to the estate. The Court disagrees. In the Fifth Application, the Applicant proposed a re-allocation of all of the fees incurred in the Adversary Proceeding category, including those covered in the First Application. Accordingly, the Court overrules Ms. Caiarelli's objection on this point.

Ms. Caiarelli next argues that certain time spent by a paralegal at the Applicant's firm was excessive and therefore should not be allowed. She points to the following time entries: (1) 05/31/12 .70 hours $133; (2) 06/11/12 .70 hours $133; (3) 06/27/12 .90 hours $171; (4) 07/02/12 .40 hours $76; and (5) 07/09/12 .90 hours $171. This time totals 3.60 hours and fees of $684.

A review of these time entries shows that the paralegal prepared and filed an amended statement of financial affairs; reviewed the file for a memorandum of judgment; reviewed and edited the release of the judgment; and sent several emails. The Court finds that the time spent by the paralegal on these tasks was both reasonable and necessary for the proper representation of the Debtor. Thus, the Court overrules Ms. Caiarelli's objection.

Next, Ms. Caiarelli objects to fees of $396 for the 1.20 hours spent by Ms. Bacher on 04/23/12 in the Pre-Petition Litigation category where she wrote a letter to inform "citation recipients" that the Debtor had filed a bankruptcy case. Ms. Caiarelli contends that this time was excessive. The Court agrees that the expenditure of 1.20 hours to draft a letter to inform creditors that the Debtor filed a bankruptcy case is an excessive amount of time. Thus, the Court disallows $198 which represents 50% of the time spent on this task ($396 x .50).

Ms. Caiarelli also objects to all of the time spent by the Applicant in the Schedules and SOFA category. She asserts that the time entries do not contain a proper description of the work performed and thus the entire $3,457 in fees sought in this category should be disallowed. The primary objective of a fee application is to provide sufficient information to enable courts to determine whether the services provided were reasonable, actual, and necessary. *In re Wire Cloth Prods., Inc.*, 130 B.R. 798, 806 (Bankr. N.D. Ill. 1991). An itemization of time must list each activity, the date, the attorney who performed the work, a description of the nature and substance of the work performed, and the time spent on the work. *In re Johnson*, 317 B.R. 347, 351 (Bankr. C.D. Ill. 2004.)

The Court has reviewed all of the time entries in the Schedules and SOFA category and finds that the Applicant has provided the necessary detail to support the allowance of fees requested. The Applicant set forth a description of the services rendered, the date of each

activity, the time spent, and the professional who performed the work. The Court finds that the Applicant has provided sufficient detail in the description of the services performed in this category in order for the Court and parties to be reasonably informed about the nature of the services. It is clear from the description in each entry that the services performed pertained to drafting the Debtor's Schedules. Accordingly, Ms. Caiarelli's objection is overruled.

Next, Ms. Caiarelli objects to all of the fees sought in the Pre-Petition Litigation category. The Applicant spent 18.30 hours of time for fees of $8,629 in connection with services related to the Debtor's pre-petition litigation involving the actions commenced by Ms. Caiarelli against the Debtor. The Applicant states that it provided the following services: (1) discussing the case with the Debtor's counsel in the pre-petition litigation; (2) preparing, reviewing, and revising a motion to terminate the automatic stay to permit an appeal to proceed regarding the pre-petition litigation; (3) drafting and revising an application to employ the Debtor's counsel in the pre-petition litigation; (4) discussing the pre-petition litigation with counsel for Ms. Caiarelli; and (5) preparing a release of judgment lien and suggestions of bankruptcy. (First Interim Application, p. 10 at ¶ 30.)

Ms. Caiarelli argues that the Applicant has failed to show the necessity of these services because the litigation was stayed pursuant to the automatic stay, and the Debtor had two separate law firms in Washington to handle this litigation. Ms. Caiarelli contends that without proper explanation why the services were not duplicative, all of the fees sought should be disallowed.

The Court has reviewed the Applicant's time entries in this category and finds that the time spent was both reasonable and necessary. The Applicant drafted a motion to lift the stay in order to allow the appeal to proceed in the pre-petition litigation; drafted a motion to employ special counsel to represent the Debtor in the appellate litigation; discussed the use of the

41

insurance proceeds; and conferred with both the Debtor's pre-petition litigation counsel and counsel for Ms. Caiarelli.  The Court finds that these services were required for the proper representation of the Debtor.  Therefore, the Court overrules Ms. Caiarelli's objection to the fees sought in this category.

Finally, Ms. Caiarelli objects to the reimbursement of the Applicant's $1,344.28 in Federal Express shipping charges.  She argues that the Applicant has not explained the necessity for the use of an overnight service when the Debtor only has three creditors.  During oral argument, Mr. Towbin, on behalf of the Applicant, could not offer a definitive explanation for these charges.  He stated that the Debtor had numerous creditors located in Washington, including his probate lawyer, and certain documents were served on these creditors via overnight service.

While the use of Federal Express may be a necessity at times, courts have required that it be used sparingly.  *See In re Environmental Waste Control*, 122 B.R. 341, 349 (Bankr. N.D. Ind. 1990).  "Deadlines should be anticipated so that filings and other papers can be sent through regular mail."  *Id.*  The Court has reviewed the Applicant's charges for the Federal Express deliveries and is unable to determine the necessity for this expenditure.  The Applicant has failed to demonstrate that this cost was required for the proper representation of the Debtor.  Specifically, the Applicant has failed to explain what was delivered and why the United States Postal Service was not utilized.  *See Convent Guardian*, 103 B.R. at 943.  Thus, the Applicant has not demonstrated the necessity for this $1,344.28 expense and therefore it will not be reimbursed.  In sum, the Court allows the Applicant reimbursement of its expenses in the amount of $4,145.40 ($5,489.68 - $1,344.28).

The following chart represents a summary of fees and expenses sought by the Applicant

and allowed by the Court for the First Application period:

### APPLICANT'S FEES

| Category | Fees Sought | Amount Disallowed | Amount Allowed |
|----------|-------------|-------------------|----------------|
| Case Administration | $9,467 | $1,978<br>$56 | $7,433 |
| Cash Collateral | $7,251 | $1,365<br>$168<br>$260 | $5,458 |
| Creditors and Claims | $10,105 | $2,210 | $7,895 |
| Disclosure Statement & Plan | $35,303 | $6,792.50<br>$1,365<br>$154 | $26,991.50 |
| Discovery | $7,126 | $1,170<br>$65 | $5,891 |
| Examiner Motion | $20,781 | $6,825 | $13,956 |
| Adversary Proceeding* | N/A | N/A | N/A |
| Pre-Petition Litigation | $8,629 | $198 | $8,431 |
| Schedules and SOFA | $3,457 | $0.00 | $3,457 |
| Fee Applications | $2,231 | $0.00 | $2,231 |
| Exemption Objections | $0.00 | $0.00 | $0.00 |
| **TOTAL** | **$104,350** | **$22,606.50** | **$81,743.50** |

* Fees related to the Adversary Proceeding category are addressed separately *infra*. The Applicant sought $9,672.38 for time spent in the Adversary Proceeding category. Accordingly, the total fees sought by the Applicant in the First Application from the Debtor's estate were $114,022.38.

### APPLICANT'S EXPENSES

| Expenses Sought | Amount Disallowed | Amount Allowed |
|-----------------|-------------------|----------------|
| $5,489.68 | $1,344.28 | $4,145.40 |

### 2.  Objection to the Second Application

In the Second Application, the Applicant only sought for a portion of the fees it incurred to be assessed against the Debtor's estate because the Applicant recognized that some of the services rendered were solely for the benefit of the Debtor and not the estate. Accordingly, the Court allowed compensation of $132,962.50 but only $85,695.63 was to be paid from the Debtor's estate. The Applicant was awarded expense reimbursement of $3,684.19. As discussed

above with respect to the First Application, the Court will only address the fees that are being sought by the Applicant from the estate, which are $85,695.63.

With respect to the Second Application, Ms. Caiarelli first objects to certain time spent by Mr. Towbin in the Adversary Proceeding category. She contends that he spent 1.0 hour drafting a routine order on 11/06/12 for $650 and he spent .50 hours on 11/09/12[34] researching on Westlaw for $325. Ms. Caiarelli argues that this was work that should have been performed by a junior attorney.

The Applicant is not seeking fees from the estate for the time spent on 11/09/12 because the work performed relates to the Dischargeability Counts category. Therefore, Ms. Caiarelli's objection to this time entry is moot.

The time entry on 11/06/12 falls under the Estate Counts category for which the Court found 100% of the time will be assessed against the Debtor's estate. This work relates to time spent by Mr. Towbin drafting a motion and order for dismissal of Count V of Ms. Caiarelli's complaint against the Debtor pursuant to Federal Rule of Civil Procedure 41(b). The Court finds that this task did not require the level of skill and expertise of a senior attorney. Rather, this work should have been completed by a junior attorney billing at a lower rate. Thus, the Court will reduce the fees sought by 50% for a total of $325 ($650 x .50). This amount reflects what a junior attorney would have billed the estate for these services. Accordingly, the Court disallows $325.

Next, in the Case Administration category, Ms. Caiarelli argues that there are numerous instances where Mr. Towbin performed paralegal work. She points to the following time entries: (1) 09/17/12 .20 hours $130; (2) 10/10/12 .20 hours $130; (3) 10/19/12 .20 hours $130; (4)

---

[34] Ms. Caiarelli references a time entry on 11/19/12 for Mr. Towbin. However, no such entry exists on that date. The Court assumes she was referring to the entry on 11/09/12 based on a description of the services he provided.

11/05/12 .20 hours $130; and (5) 12/17/12[35] .30 hours $195.  These entries reflect 1.10 hours of
time spent and $715 in fees sought by the Applicant.

The Court has examined these time entries.  Mr. Towbin reviewed and filed several of the
Debtor's monthly operating reports; prepared a proof of claim and notice; and emailed with the
United States Trustee regarding outstanding fees owed by the Debtor.  The Court finds these
tasks did not require the skill and level of experience held by an attorney.  Rather, the work
should have been performed by a paralegal.  The Court agrees with Ms. Caiarelli that the filing
of the reports, emailing the United States Trustee about an outstanding fee owed, and preparing a
proof of claim were tasks that should have been performed by a paralegal instead of an attorney.
These services did not require the skill and expertise of an attorney and were easily delegable to
paralegals.  *See Spegon*, 175 F.3d at 553.  Thus, the Court allows $209 for these tasks (1.10
hours x $190) which represents what would have been billed by the Applicant's paralegal.  The
Court disallows $506 ($715 - $209).

Next, in the Plan and Disclosure Statement category, Ms. Caiarelli contends that Mr.
Towbin spent time drafting routine documents and researching on Westlaw and that these
services should have been performed by a junior attorney.  She objects to the following entries:
(1) 09/18/12 .80 hours $520; (2) 09/19/12 .50 hours $325; (3) 09/20/12 .80 hours $520; (4)
09/22/12 1.0 hour $650; (5) 09/24/12 3.0 hours $1,950; (6) 09/25/12 4.50 hours $2,925; (7)
09/26/12 5.60 hours $3,640; (8) 09/27/12 2.50 hours $1,625; (9) 09/27/12 .80 hours $520; (10)
10/08/12 .50 hours $325; (11) 10/08/12 1.20 hours $780; (12) 10/18/12 4.40 hours $2,860; (13)
10/18/12 .50 hours $325; (14) 10/19/12 2.20 hours $1,430; (15) 10/25/12 1.20 hours $780; (16)
10/25/12 .60 hours $390; (17) 10/25/12 .80 hours $520; (18) 10/26/12 1.0 hour $650; and (19)

---

[35] Ms. Caiarelli references a time entry on 12/07/12 for Mr. Towbin.  However, no such entry exists on that date.
The Court assumes she was referring to the entry on 12/17/12 based on a description of the work he performed.

12/05/12 1.50 hours $975. These entries total 33.40 hours of time spent for fees of $21,710.

In these time entries, Mr. Towbin reviewed Ms. Caiarelli's objection to confirmation of the Debtor's plan; he drafted a response to her objection; he prepared an amended plan of reorganization; he drafted a sur-reply to the objection to confirmation; he drafted a declaration in support of the plan; and he performed a Westlaw search regarding claim classification. The Court has reviewed these time entries and agrees with Ms. Caiarelli that such work did not require the skill and expertise of a senior attorney. A senior partner who spends time reviewing documents or doing research a beginning associate could do will be paid at the rate of a beginning associate. *Pettibone*, 74 B.R. at 303. The Court finds that these services did not require the skill and level of experience held by a senior attorney. Rather, the work should have been performed by a junior attorney billing at a lower rate. Accordingly, the Court will reduce the fees sought by 50% for a total of $10,855 ($21,710 x .50), which represents what a junior attorney would have billed for these services. Thus, the Court disallows $10,855.

Next, Ms. Caiarelli objects to several time entries in the Adversary Proceeding category on the basis that there was a duplication of services. First, she points to 11/26/12 where Mr. Doyle incurred .50 hours and billed $132.50 and Mr. Banich incurred .80 hours and billed $332 for an intraoffice conference. These time entries relate to the Estate Counts and the Dischargeability Counts category, wherein only 50% of the billed time was sought and allowed. Accounting for this allocation, the Applicant is effectively only seeking 50% of the time billed for the conference. While some conferencing may be necessary, both attorneys may not charge for that conference. *Wildman*, 72 B.R. at 710; *GSB Liquidating*, 1995 WL 521528, at *3. Attorneys conferencing among themselves constitutes duplicate services which are unreasonable and unnecessary. *See Adventist Living Ctrs.*, 137 B.R. at 716–17. Thus, the Court disallows

$66.25 which represents 50% of the time billed by Mr. Doyle for the conference ($132.50 x .50).

Next, Ms. Caiarelli points to the time spent on 12/12/12 by Mr. Towbin (2.40 hours), Mr. Banich (3.20 hours), and Mr. Doyle (3.20 hours) who all charged for an intraoffice conference regarding the motion for summary judgment. These time entries relate to the Estate Counts and the Dischargeability Counts category, wherein only 50% of the billed time was sought and allowed. The Court finds that this constitutes a duplication of services and will not allow fees for the 3.20 hours charged by either Mr. Doyle or Mr. Banich. Thus, the Court disallows $1,088 for this conferencing which represents 50% of the time billed by Mr. Doyle and Mr. Banich (Mr. Doyle--1.60 hours x $265 = $424 and Mr. Banich--1.60 hours x $415 = $664).

Next, Ms. Caiarelli objects to excessive time spent in the Disclosure Statement and Plan category. Specifically, she objects to the $1,298.50 in fees sought by the Applicant for 4.90 hours of time spent by Mr. Doyle on 10/08/12 drafting an omnibus objection to improperly filed ballots. The Court has reviewed the omnibus objection which was approximately three pages in length, not including the attached exhibits. (Docket No. 158.) The basis of the Debtor's objection to the ballots was that the parties who filed those ballots did not have allowed claims. This theory is neither novel nor complex and it should not have taken almost five hours to prepare this document. Therefore, the Court sustains Ms. Caiarelli's objection and finds that the time spent drafting this document was excessive and unnecessary. The Court will allow only one-half of the fees sought for this task for a total of $649.25. Accordingly, the Court disallows $649.25.

Lastly, in this category, Ms. Caiarelli objects to the $325 in fees sought by the Applicant for .50 hours spent by Mr. Towbin on 10/25/12 for calling an appraiser. She contends that this time spent was excessive. The Court has reviewed the time entry and agrees that the expenditure

of .50 hours to call an appraiser regarding an inspection of the Debtor's property was excessive and thus unreasonable. Further, such a task did not require the skills and expertise of an attorney. The Court will allow only .10 hours for this service at a paralegal's rate for a total of $19 (.10 hours x $190). Thus, the Court disallows $306 ($325 - $19).

Next, Ms. Caiarelli contends that although the Applicant only assessed 25% of the fees incurred in the Adversary Proceeding category to the Debtor's estate, that percentage was not applied to the Second Application. Thus, Ms. Caiarelli argues that there was an overcharge to the Debtor's estate of $48,954.37. As the Court already found with respect to the First Application, the Applicant's Fifth Application proposed a re-allocation of all of the fees incurred in the Adversary Proceeding category, including those covered in the Second Application. Accordingly, the Court overrules Ms. Caiarelli's objection on this point.

Finally, Ms. Caiarelli objects to the reimbursement of the $2,416.20 in Westlaw charges because there is no detailed description provided and those expenses were not allocated between compensable and non-compensable categories. The Court finds that the Applicant has not sufficiently detailed all of its expenses related to the Westlaw research. For example, some of the charges for Westlaw are documented as "Westlaw; (DRD); West Group." This description provides no detail regarding the topic that was researched. As a result, the Court cannot determine whether these expenses were actual and necessary to accomplish the proper representation of the Debtor. The following Westlaw charges are therefore disallowed: (1) 08/17/12 $72.66; (2) 08/17/12 $42.10; (3) 08/20/12 $59.38; (4) 08/21/12 $28.69; (5) 08/22/12 $180; (6) 08/23/12 $249.70; (7) 08/24/12 $120.25; (8) 08/27/12 $166.94; (9) 08/29/12 $59.38; (10) 08/30/12 $8.68; (11) 08/30/12 $45.97; (12) 08/31/12 $1.35; (13) 09/03/12 $2.52; (14) 09/10/12 $112.58; (15) 09/26/12 $3.37; (16) 10/08/12 $26.84; and (17) 12/04/12 $363.83. These

disallowed charges total $1,544.24.   Further, as an additional basis for not allowing reimbursement of these charges, the Court finds that the charges were not allocated between the compensable and non-compensable categories.   Thus, it is impossible for the Court to determine if these expenses were personal to the Debtor or whether they were incurred for the proper representation of the estate.

With respect to the remaining Westlaw charges which do contain a description of the research topic, the Court finds that some of those charges are not reimbursable because the research performed related to the Adversary Proceeding category and it is not clear if that research related to the Estate Counts, the Dischargeability Counts, or both.   Because it is not clear from the entries themselves, the Court disallows the following Westlaw expenses: (1) 08/02/12 $55.60; (2) 08/13/12 $4.79; (3) 08/14/12 $25.33; (4) 08/14/12 $3.72; (5) 08/15/12 $9.05; (6) 08/16/12 $11.41; (7) 09/03/12 $3.27; (8) 11/02/12 $6.67; (9) 11/06/12 $143.68; (10) 11/10/12 $13.42; (11) 11/29/12 $17.18; (12) 12/12/12 $156.02; (13) 12/13/12 $150.11; and (14) 12/19/12 $15.60.   These disallowed expenses total $615.85.

The Court will allow the reimbursement of the remainder of the Westlaw charges on the basis that the Applicant provided a sufficient description of the topic researched and those expenses clearly did not pertain to the Adversary Proceeding category or other non-compensable categories because they were incurred with respect to confirmation of the Debtor's plan.   The following Westlaw charges are therefore allowed: (1) 08/20/12 $11.67; (2) 09/21/12 $11.56; (3) 09/24/12 $12.38; (4) 09/25/12 $3.81; (5) 10/18/12 $28.92; (6) 11/30/12 $101.54; (7) 12/04/12 $4.01; (8) 12/05/12 $28.90; (9) 12/06/12 $1.41; (10) 12/07/12 $35.12; and (11) 12/10/12 $16.69. These allowed Westlaw expenses total $256.01.

In sum, the Court sustains in part Ms. Caiarelli's objection to reimbursement of the

Westlaw expenses on the basis that there was insufficient detail provided and the entries were not allocated between compensable and non-compensable categories. And, the Court overrules in part her objection because some of the charges were sufficiently detailed and pertain to confirmation of the plan. Accordingly, the Court only allows reimbursement of $256.01 in Westlaw expenses. The Court allows reimbursement of expenses in the total amount of $1,524.10 ($3,684.19 - $1,544.24 - $615.85).

The following chart represents a summary of fees and expenses sought by the Applicant and allowed by the Court for the Second Application period:

### APPLICANT'S FEES

| Category | Fees Sought | Amount Disallowed | Amount Allowed |
|----------|-------------|-------------------|----------------|
| Case Administration | $3,739.50 | $506 | $3,233.50 |
| Disclosure Statement & Plan | $64,306.50 | $10,855 $649.25 $306 | $52,496.25 |
| Fee Applications | $1,894 | $0.00 | $1,894 |
| Adversary Proceeding* | N/A | N/A | N/A |
| **TOTAL** | **$69,940.00** | **$12,316.25** | **$57,623.75** |

\* Fees related to the Adversary Proceeding category are addressed separately *infra*. In the Second Application, the Applicant sought fees of $15,755.63 for work performed in the Adversary Proceeding category to be paid by the Debtor's estate. Thus, the total fees sought by the Applicant were $85,695.63.

### APPLICANT'S EXPENSES

| Expenses Sought | Amount Disallowed | Amount Allowed |
|-----------------|-------------------|----------------|
| $3,684.19 | $1,544.24 $615.85 | $1,524.10 |
| **TOTAL:   $3,684.19** | **$2,160.09** | **$1,524.10** |

### 3. **Objection to the Third Application**

In the Third Application, the Applicant only sought for a portion of the fees it incurred to be assessed against the Debtor's estate because the Applicant recognized that some of the services rendered were solely for the benefit of the Debtor and not the estate. Accordingly, the

Court allowed compensation of $252,220.50 but only $193,433.63 was to be paid from the Debtor's estate. The Applicant was awarded expense reimbursement of $7,610.81. As discussed above with respect to the First and Second Applications, the Court will only address the fees that are being sought by the Applicant from the estate, which are $193,433.63.

With respect to the Third Application, Ms. Caiarelli first objects to certain time spent by Mr. Towbin in the Adversary Proceeding and Case Administration categories. She contends that he spent 2.50 hours on 03/17/13 researching on Westlaw for $1,687.50, and he spent .20 hours reviewing and filing a monthly operating report on 01/14/13 for $135.[36] Ms. Caiarelli argues that this was work that should have been performed by a junior attorney.

First, with respect to the 2.50 hours billed on 03/17/13 in the Adversary Proceeding category, that work related to the Dischargeability Counts, for which the Applicant is not seeking compensation from the estate. Thus, Ms. Caiarelli's objection to this time entry is moot.

Second, with respect to the $135 billed in the Case Administration category by Mr. Towbin on 01/14/13 for reviewing and filing a monthly operating report, the Court finds that such work does not require the skill and expertise of a senior attorney. Rather, such task should have been performed by a paralegal. The Court will allow the .20 hours to be charged at the $190 hourly rate of the Applicant's paralegal. Thus, the Court will allow only $38 for this time .20 hours x $190). Accordingly, the Court disallows $97 ($135 - $38).

In the Discharge Injunction Violation category, Ms. Caiarelli objects to two time entries of Mr. Towbin where he performed legal research. Because the Court is disallowing the entire amount of fees sought by the Applicant in this category on the basis that the services did not confer a benefit to the estate, *see infra* pp. 55-56, this objection is moot.

---

[36] Ms. Caiarelli mistakenly states that both time entries are found in the Adversary Proceeding category. The latter entry is in the Case Administration category.

Ms. Caiarelli next contends that in the Adversary Proceeding category on 01/05/13,[37] Mr. Towbin spent .80 hours of time reviewing her reply in support of the motion for summary judgment and that this time duplicated the work of Mr. Banich. The Court has reviewed the time spent by both Mr. Towbin and Mr. Banich on 01/05/13 and finds that Mr. Towbin's services did not duplicate the time spent by Mr. Banich. Mr. Banich billed only .10 hours to review and exchange correspondence with Mr. Towbin regarding Ms. Caiarelli's reply. His time spent did not duplicate Mr. Towbin's time. Thus, the Court overrules the objection on this point.

Ms. Caiarelli also argues that on 03/17/13[38] multiple attorneys at the Applicant's firm charged for a conference call. The fees sought by Mr. Towbin for this conference are included in the Dischargeability Counts category. Because the Applicant is not seeking compensation from the estate for fees incurred in that category, Ms. Caiarelli's objection is moot.

Similarly, in the Discharge Injunction Violation category, Ms. Caiarelli objects to $135 for .20 hours of time spent by Mr. Towbin on 07/30/13 because both he and Mr. Banich charged the estate for a conference regarding proposed changes to a draft order. Because the Court is disallowing all of the fees sought by the Applicant in this category, *see infra* pp. 55-56, this objection is moot.

Next, Ms. Caiarelli argues that in the Case Administration category, the Applicant billed an excessive amount of time for services with respect to retaining an appraiser.[39] She points to the following time spent on this task: (1) 01/06/13 DRD .70 hours $185.50; (2) 01/07/13 DRD

---

[37] This time entry relates to the Estate Counts and the Dischargeability Counts category, wherein only 50% of the billed time was sought and allowed.

[38] Ms. Caiarelli references 03/19/13 as the date the conference took place. After reviewing the Application, however, the Court did not find an entry on that date where Mr. Towbin or Mr. Banich conferred. The Court assumes that Ms. Caiarelli was referring to the time spent on 03/17/13.

[39] Ms. Caiarelli incorrectly references the Adversary Proceeding category in her Supplement to Objection to Fifth and Final Application. There are no entries in this category that relate to the retention of an appraiser. Rather, those entries are found in the Case Administration category.

2.50 hours $662.50; (3) 01/08/13 SBT .50 hours $337.50; (4) 01/08/13 SBT .10 hours $67.50;

(5) 01/08/13 DRD 2.0 hours $530; (6) 01/10/13 DRD 2.10 hours $556.50; (7) 01/21/13 MSR

1.80 hours $495; and (8) 01/22/13 MSR 1.50 hours $412.50.  Three attorneys spent a total of

11.20 hours and incurred fees of $3,247.  The Court agrees with Ms. Caiarelli that the Applicant

spent an excessive amount of time on a rather routine motion.  This task should not have required

the services of three separate attorneys to draft, review, finalize, and prepare for the hearing on

the motion.  Accordingly, the Court disallows approximately one-half of the amount sought or

$1,623.50.

Next, in the Adversary Proceeding category Ms. Caiarelli objects to certain fees sought

by the Applicant on the basis that the time spent was excessive.  Specifically, she takes issue

with the time entries on (1) 02/05/13 TGB 10.40 hours $4,316 and (2) 03/15/13 TGB 11.20

hours $4,648.  The fees sought total $8,964.  These time entries relate to the Estate Counts and

the Dischargeability Counts category, wherein only 50% of the billed time was sought and

allowed.  Accounting for this allocation, the Applicant is effectively only seeking 50% of the

fees sought or $4,482.

Ms. Caiarelli recommends that the Court reduce these fees by half.  The Court has

reviewed the work performed by Mr. Banich on both dates.  It appears that he was working on

pleadings related to the Debtor's cross-motion for summary judgment.  In reviewing a fee

petition, the Court has the authority to determine the reasonable amount of time an attorney

should have to spend on a given project.  *See Pettibone*, 74 B.R. at 306.  The Court finds that the

Applicant expended an unreasonable amount of time on this task.  There are numerous other time

entries which show that several of the Applicant's attorneys spent a great deal of time on the

motion for summary judgment.  Therefore, the Court sustains Ms. Caiarelli's objection and

disallows one-half of the fees sought in these two time entries which totals $2,241 ($4,482 x .50).

Also in the Adversary Proceeding category, Ms. Caiarelli objects to .70 hours of time spent by Mr. Banich[40] on 02/20/13 for fees of $290.50 on the basis that there is no description of the work performed. The time entry reads as follows: "met with C. Taylor and K. Taylor; updated S. Towbin re same." This time entry relates to the Estate Counts and the Dischargeability Counts category, wherein only 50% of the billed time was sought and allowed. Accounting for this allocation, the Applicant is effectively seeking only $145.25 in fees.

The Court finds that the description of the task fails to identify the nature and purpose of the meeting. *See Pettibone*, 74 B.R. at 301. Indeed, time records that give no explanation of the activity performed are not compensable. *Wildman*, 72 B.R. at 708-09. Therefore, the Court sustains Ms. Caiarelli's objection to this time entry and disallows the $145.25 in fees sought.

Next, in the Discharge Injunction Violation category, Ms. Caiarelli objects to the 2.70 hours spent on 04/24/13 by Mr. Towbin on the basis that the amount sought is excessive. Because the Court is disallowing the entire amount of fees sought by the Applicant in this category on the basis that the services did not confer a benefit to the estate, *see infra* pp. 55-56, this objection is moot.

Ms. Caiarelli next objects to the 1.40 hours of time spent by the Applicant on 04/23/13 for fees of $581 in the Adversary Proceeding category on the basis that the work performed was with respect to the Debtor's exemptions which is not chargeable to the estate and thus resulted in an overcharge to the estate. The fees sought by the Applicant for this conference are included in the Dischargeability Counts category. Because the Applicant is not seeking compensation from the estate for fees incurred in that category, Ms. Caiarelli's objection is moot.

---

[40] Ms. Caiarelli mistakenly references Mr. Towbin. After reviewing the time entries, however, it appears that Mr. Towbin did not bill any time on 02/20/13. Instead, it appears that Mr. Banich engaged in a conference on this date.

Ms. Cairelli next argues that the Applicant recorded two billing entries each in the amount of $202.50 on 02/11/13 in the Case Administration category. She contends that one of the entries was a duplicate and the other entry should have been contained in the Adversary Proceeding category and charged at 25% to the estate. The Court disagrees with Ms. Caiarelli that these two time entries constitute double billing. One entry pertains to the Applicant's attendance at an omnibus hearing in the bankruptcy case and therefore belongs in the Case Administration category. The second entry relates to the Applicant's appearance with respect to matters in the Adversary Proceeding. Therefore, these two entries do not represent a duplication of time. However, the entry with respect to the Adversary Proceeding does not belong in the Case Administration category. The fees sought by the Applicant relating to the Adversary Proceeding category were separately contained in Exhibits B & C to the Fifth Application. Thus, the time entry on 02/11/3 for work performed in the Adversary Proceeding should not be included in the Case Administration category. As a result, the Court disallows the $202.50 billed in the Case Administration category for attendance at the hearing on matters in the Adversary Proceeding.

Next, Ms. Caiarelli contends that the Applicant billed the estate $152,148.50[41] for services relating to holding her in contempt for violation of the discharge injunction, and that such services did not benefit the estate. The Court previously determined in connection with the Fourth Application that the time spent by the Applicant in the Discharge Injunction Violation category would not be allowed because once the Debtor received his discharge no benefit could have been conferred upon the estate by having the Applicant proceed with a second motion to

---

[41] According to the Applicant, even though the time entries show fees of $152,148.50, it is only seeking $148,148.50, which represents a $4,000 reduction. (Third Application, p. 4 at ¶ 10.) On September 24, 2013, the Court delivered an oral ruling on damages to be awarded against the respondents based on the Court's prior ruling in favor of the Debtor on the motion to enforce the discharge injunction. The Court determined that $4,000 billed by the Applicant in pursuing that motion was not reasonable.

enforce the discharge injunction. The Applicant argued in the Fourth Application that the fees were reasonable and necessary because it was defending the Debtor's estate against a potential administrative expense claim that Ms. Caiarelli might file. The Applicant did not explain the basis for this argument and the Court rejected it, disallowing the $24,273.50 in fees sought by the Applicant in the Fourth Application. No administrative expense claim was filed by Ms. Caiarelli and the case is now closed. The Court similarly disallows the $148,148.50 in fees sought by the Applicant in this category in connection with the Third Application.

Finally, with respect to the expenses, Ms. Caiarelli objects to reimbursement of the $3,678.27 in Westlaw charges because those expenses were not allocated between compensable and non-compensable categories and there is no detailed description provided. For the same reasons previously articulated, the Court will not reimburse the Applicant for the Westlaw charges because those expenses are not allocated between the compensable and non-compensable categories. In fact, after reviewing those charges, it appears that many of them pertain to the Discharge Injunction Violation category and thus would be considered non-compensable in any event. Accordingly, the Court disallows $3,678.27 for the Westlaw charges.

Ms. Caiarelli also objects to the $338.47 in Federal Express charges. She argues that the Applicant has failed to show the necessity for this expense. The Court has reviewed the charges for those deliveries and is unable to determine the necessity for this expenditure. The Applicant has failed to demonstrate that this cost was required for the proper representation of the Debtor. Specifically, the Applicant has failed to explain what was delivered and why the United States Postal Service was not utilized. *See Convent Guardian*, 103 B.R. at 943. Thus, the Applicant has not demonstrated the necessity for this expense and therefore the $338.47 expense will not be reimbursed.

In sum, the Court disallows $4,016.74 of the expenses sought by the Applicant ($338.47 + $3,678.27). Thus, the Court allows a total of $3,594.07 in expense reimbursement ($7,610.81 - $4,016.74).

The following chart represents a summary of fees and expenses sought by the Applicant and allowed by the Court for the Third Application period:

## APPLICANT'S FEES

| Category | Fees Sought | Amount Disallowed | Amount Allowed |
|---|---|---|---|
| Discharge Injunction Violation | $148,148.50 | $148,148.50 | $0.00 |
| Adversary Proceeding* | N/A | N/A | N/A |
| Case Administration | $10,573.50 | $97 $1,623.50 $202.50 | $8,650.50 |
| Disclosure Statement & Plan | $5,995.50 | $0.00 | $5,995.50 |
| Exemptions | $3,536 | $0.00 | $3,536 |
| Fee Applications | $5,294 | $0.00 | $5,294 |
| Pre-Petition Litigation | $290.50 | $0.00 | $290.50 |
| **TOTAL** | **$173,838** | **$150,071.50** | **$23,766.50** |

* Fees related to the Adversary Proceeding category are addressed separately *infra*. In the Third Application, the Applicant sought fees of $19,595.63 for work performed in the Adversary Proceeding category to be paid by the Debtor's estate. Thus, the total fees sought by the Applicant were $193,433.63.

## APPLICANT'S EXPENSES

| Expenses Sought | Amount Disallowed | Amount Allowed |
|---|---|---|
| $7,610.81 | $3,678.27 $338.47 | $3,594.07 |
| **TOTAL: $7,610.81** | **$4,016.74** | **$3,594.07** |

### 4. **Fourth Application**

In the Fourth Application, the Applicant only sought for a portion of the fees it incurred to be assessed against the Debtor's estate because the Applicant recognized that some of the services rendered were solely for the benefit of the Debtor and not the estate. The Court allowed compensation in the amount of $48,189.71 from the estate and the reimbursement of expenses in

the sum of $2,382.28. The Court did not address the fees related to work performed solely for the benefit of the Debtor because the Applicant did not seek payment of those fees from the Debtor's estate.

Ms. Caiarelli previously objected to the fees and expenses sought in the Fourth Application. The Court addressed that objection in its interim amended order entered on December 9, 2014. (Dkt. No. 385.) The following charts represent the fees and expenses sought and allowed with respect to the Fourth Application.

| Fees Sought | Amount Disallowed | Amount Allowed |
|---|---|---|
| $149,117.63 | $100,927.92 | $46,852.45* |

*The Court allowed compensation of $48,189.71 in the Fourth Application. However, the Fifth Application re-allocates the fees sought in the Adversary Proceeding category that were sought in the First, Second, Third, and Fourth Applications. Accordingly, the total allowed in the Fourth Application is reduced by $1,337.26, which represents the amount allowed in the Adversary Proceeding category. Therefore, the compensation allowed in the Fourth Application totals $46,852.45.

| Expenses Sought | Amount Disallowed | Amount Allowed |
|---|---|---|
| $4,346.79 | $1,964.51 | $2,382.28 |

### 5. Adversary Proceeding Category

As discussed above, the Applicant does not seek fees or expenses related to the Adversary Proceeding category for the Fifth Application period, but the Applicant does seek compensation for work performed in this category during the First, Second, Third, and Fourth Application periods.

The following chart represents a summary of fees sought by the Applicant and allowed by the Court for the First, Second, Third, and Fourth Application periods:

| Category | Fees Sought | Amount Disallowed | Amount Allowed |
|---|---|---|---|
| Estate Counts | $10,124.50 | $585 (1st Application) $325 (2nd Application) | $9,214.50 |

| Estate Counts and Dischargeability Counts | $79,555.25 | $2,177 (1st Application) $66.25 (2nd Application) $1,088 (2nd Application) $2,241 (3rd Application) $145.25 (3rd Application) | $73,837.75 |
| Dischargeability Counts | $0.00 | $0.00 | $0.00 |
| Rule 60(b) Motion | $7,599.50 | $3,799.75 | $3,799.75 |
| **TOTAL** | **$97,279.25** | **$10,427.25** | **$86,852** |

Accordingly, the Court allows fees in the amount of $86,852 for work performed by the Applicant in the Adversary Proceeding category.

### 6. Summary of Allowed Fees and Expenses

The chart below represents the total fees and expenses allowed with respect to the First, Second, Third, Fourth, and Fifth Applications as well as the fees incurred in the Adversary Proceeding category.

| Application | Allowed Fees | Allowed Expenses |
| --- | --- | --- |
| First Application | $81,743.50 | $4,145.40 |
| Second Application | $57,623.75 | $1,524.10 |
| Third Application | $23,766.50 | $3,594.07 |
| Fourth Application | $46,852.45 | $2,382.28 |
| Fifth Application | $51,979.50 | $0.00 |
| Adversary Proceeding | $86,852.00 | N/A |
| **TOTAL** | **$348,817.70** | **$11,645.85** |

## C. Excessiveness of the Applicant's Fees

Ms. Caiarelli contends that the fees sought by the Applicant should be reduced in light of the results achieved and because the fees significantly exceed the total amount of assets administered in this case.

The Applicant seeks a total of $567,481.70 in fees for work performed in this case.[42] The

---

[42] Ms. Caiarelli contends that the Applicant seeks $691,406.76. This figure, however, includes fees that were billed by the Applicant, but the payment of which is not sought from the Debtor's estate. As previously discussed, the Court will not consider the fees that are not sought from the estate in the calculation of the total amount of compensation requested by the Applicant.

Applicant has not clearly stated the amount of assets available for distribution in this case. However, after reviewing the Applicant's Supplemental Statement and its Reply to the Fifth Application, it appears that the estate is comprised of the following assets: (1) personal property--$107,801.48; (2) real property--$56,875; (3) inherited IRA ($255,204.17) and tax refund which total $282,042.17; and (4) pre-petition retainer--$11,468.54. These assets total $458,187.19.[43]

Ms. Caiarelli argues that there is no justification for the Applicant to seek fees that are significantly larger than the total amount of assets administered in this case. She maintains that a significant portion of the Applicant's fees should be disallowed because the case solely benefitted the Debtor and the fees charged by the Applicant ensured no distribution to any of the unsecured creditors. Further, Ms. Caiarelli contends that because the Debtor's mother guaranteed the payment of fees not recovered from the Debtor's estate, the Applicant used the "backstop" of the guaranty to fight Ms. Caiarelli at every turn of the case and thus ran up the fees. (Sur-Objection to Fifth and Final Application, p. 5 at ¶ 14.) Finally, Ms. Caiarelli argues that the Applicant failed to exercise good faith billing judgment and that overall the fees sought should be reduced to an amount appropriate for an individual debtor liquidation case.

In defense of the fees sought, the Applicant contends that the fees in this case are high because Ms. Caiarelli fought the Debtor at every turn. The Applicant argues that Ms. Caiarelli filed objections and frivolous motions throughout the case and that as a result of her "endless litigation," unsecured creditors will not receive a distribution in this case. (Reply of Applicant in Support of Fifth and Final Application, p. 13 at ¶ 30.) The Applicant states that the fact that its fees may consume the remaining assets in the estate is attributable to Ms. Caiarelli's conduct and such loss was "self-inflicted and avoidable." (*Id.*)

---

[43] Ms. Caiarelli incorrectly contends that the estate assets total $271,771.38. (Objection to Fifth and Final Application, pp. 12 & 14.)

The Court concurs with Ms. Caiarelli that the fees in this case are excessive in light of the results achieved. While Ms. Caiarelli has been an extremely active creditor in this case and has opposed many of the Debtor's actions, the Applicant cannot shift the blame to her for the excessive fees charged here. The secured creditors were paid under the plan, but the unsecured creditors received nothing. Indeed, at oral argument counsel for the Applicant acknowledged that the case was not successful with respect to the unsecured creditors. This was a liquidating individual Chapter 11 case, not a complex business reorganization that would have necessitated extensive work by professionals.

The Court also finds that the Debtor used the case, at least in part, to further his own agenda. In fact, he fought to keep the inherited IRA away from his creditors. He ultimately lost that battle after the Seventh Circuit Court of Appeals determined that a non-spousal inherited IRA did not qualify as retirement funds exempt from creditors' claims. *See In re Clark*, 714 F.3d 559 (7th Cir. 2013).

In determining what constitutes reasonable compensation, the Seventh Circuit has stated that "there are limits—measured by standards of reasonableness—to what a professional can demand in a bankruptcy case." *In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1178 (7th Cir. 1994). "Reasonable time spent does not necessarily include all time actually expended." *Spanjer Bros.*, 191 B.R. at 748. Accordingly, "applicants should exercise good faith 'billing judgment.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Specifically, the Supreme Court has stated that counsel should exclude from a fee request hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Section 330 of the Code places additional requirements on compensation to be awarded to professionals from estate assets. A court must consider the benefit of services provided to the

estate. *Stoecker*, 114 B.R. at 969-70. Indeed, it is common for a bankruptcy court to reduce a professional's fees when the court perceives a lack of benefit to the estate. *Frank's Law Corp. v. St. Vrain Station Co. (In re St. Vrain Station Co.)*, 151 B.R. 549, 552 (D. Colo. 1993) (reducing debtor's counsel's compensation by 15% for lack of any significant benefit to the estate).

Based on the excessive time spent in this case and the results achieved, the Court finds that those hours should be excluded from the fees sought. In order to accomplish that reduction, the Court will reduce the allowed fees by 10% which constitutes $34,881.77 ($348,817.70 x .10). Accordingly, the Court allows the Applicant final compensation in the amount of $313,935.93.

## CONCLUSION

For the foregoing reasons, the Court sustains in part and overrules in part the objection of Ms. Caiarelli to the final fees and expenses sought by the Applicant.

IT IS HEREBY ORDERED that the Applicant is awarded final compensation in the amount of $313,935.93 and is authorized reimbursement of its expenses in the sum of $11,645.85 from the estate.

ENTERED:

DATE: MAY 1 6 2016

Donald R. Cassling
United States Bankruptcy Judge